706 A.2d 1181

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. SAMUEL BURTON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 3, 1997—Decided March 10, 1998.

unknown.... The doctrine ... was eventually extended to include [tangible and intangible personal property].").

Before Judges KESTIN, CUFF and STEINBERG.

*Ivelisse Torres*, Public Defender, attorney for appellant (*M. Virginia Barta*, Assistant Deputy Public Defender, of counsel and on the brief).

*Jeffrey S. Blitz*, Atlantic County Prosecutor, attorney for respondent (*Jack R. Martin*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

STEINBERG, J.S.C. (temporarily assigned).

A jury found defendant guilty of third-degree theft from the person. Prior to sentence, defendant pled guilty to an unrelated indictment charging him with possession of a controlled dangerous substance (cocaine). Defendant was also found guilty of a violation of probation on another unrelated indictment as a result of the two convictions. The trial court granted the State's motion to sentence defendant to an extended term as a persistent offender on the conviction for theft from the person, and sentenced defendant to ten years in prison with five years of parole ineligibility. A concurrent four-year sentence was imposed on the charge of possession of a controlled dangerous substance. The trial judge terminated defendant's probation without improvement. The appropriate statutory assessments and penalties were ordered. Defendant appeals. We affirm.

On October 27, 1995, Glen Craven (victim) took a bus from Vineland to Atlantic City, on his way to work at the Taj Mahal. He was walking down Atlantic Avenue when defendant approached him and demanded two dollars. Defendant said he needed two dollars because his mother was asthmatic. The victim told defendant he did not have two dollars. Defendant said "don't walk away from me. If you don't give me two dollars, I'm going to … follow you." The victim continued walking and defendant walked along with him. The victim was apprehensive and took off his wrist watch and placed it in his pocket.

The victim entered a book store because he knew someone named Frank who worked there. He felt Frank would help him if necessary. However, Frank was in the back room when the victim entered the store. The victim browsed around the book store hoping defendant would become distracted so that he could leave. At what he thought was an opportune time the victim ran from the store. Defendant ran after him. The victim saw a jitney, flagged it down, and took a jitney ticket from his pocket. Defendant attempted to take the ticket and again demanded two dollars. The victim attempted to get on the jitney. Defendant told the driver the victim didn't want to get on the jitney. The victim said he did want to get on the jitney and struggled to get inside.

The victim was also carrying a duffle bag. Defendant attempted to take it from the victim, and the victim struggled to hold on to it. Defendant finally gained control of the duffle bag and fled. The victim's duffle bag contained a walkman with headphones, tapes, batteries, a belt, and a work shirt. The victim took the jitney to work where his employer called the police.

Officer Vincent DeMaria responded to the call. Officer DeMaria testified that the victim told him his assailant said his name was Sam. The victim could not remember the last name. Officer DeMaria testified that the victim was able to give him a description of the person who took his duffle bag. Although the victim testified that he had previously seen defendant in a local pizza restaurant and that defendant had told him his name was Sam Burton, the victim neglected to reveal that fact to Officer DeMaria. The victim testified he was a little nervous and forgot to tell Officer DeMaria.

A few days later, while working in the area where the crime occurred, Officer DeMaria looked for anyone who fit the description given to him by the victim. He saw defendant standing in a bank drive-through and felt that defendant fit some of the description supplied by the victim, particularly with regard to a knitted

cap that closely resembled the description of the cap the suspect was wearing.

Officer DeMaria approached defendant and asked defendant his name, date of birth, and what he was doing. ·Defendant responded that he was asking people for money so that he could get to Philadelphia and bring his son back home. He asked Officer DeMaria for six dollars. Officer DeMaria proceeded to the Detective Bureau and gave the information he had obtained to Detective Redd.

Detective Redd was able to assemble a photographic array based upon the information received from Officer DeMaria. Six photographs, including one of defendant, were assembled. Each photograph was of a male in orange jail clothing. Detective Redd took the photographic array to the victim and asked if he could identify a suspect. Detective Redd told the victim not to identify a photograph if the person who committed the crime was not in the photographic array. After looking at the photographs for between five and seven minutes, the victim selected defendant's photograph and stated he was positive that that was the person who had committed the crime.

On appeal defendant raises the following issues:

POINT I THE ADMISSION INTO EVIDENCE OF THE PHOTO ARRAY WHICH SHOWED DEFENDANT AND FIVE OTHER MALES IN ORANGE PRISON GARB ALONG WITH THE TRIAL COURT'S PREJUDICIAL INSTRUCTION MANDATES REVERSAL OF DEFENDANT'S CONVICTION.

POINT II DEFENDANT'S SENTENCE SHOULD BE REDUCED TO THE PRESUMPTIVE EXTENDED TERM WITH NO PAROLE INELIGIBILITY.

POINT III THE JUDGMENT MUST BE AMENDED TO REFLECT THAT THE AMOUNT OF RESTITUTION ORDERED WAS $150.

After the State had presented its evidence, the Assistant Prosecutor stated that "subject to any rebuttal evidence as well as the moving of certain items in evidence, the State would rest at this time." The trial judge excused the jury. Defense counsel announced to the court that defendant would not take the witness stand. A charge conference took place. The Assistant Prosecutor offered the photographic array into evidence. Defense counsel

promptly objected. The trial judge overruled the objection and, in the course of his charge, gave the following instruction:

> In this case, there was a photo array that I permitted to be marked into evidence. No special importance is to be given to the array, because the police have pictures of many people and for different reasons. Now, merely because all people are in orange suits, that is not to say that you are to consider that for anything other than the fact that the array was shown to Glen Craven.

Defendant did not object to the charge as given, or suggest an alternative charge.

■ Defendant contends that the photographic array should not have been admitted into evidence because it was obvious that defendant was in jail clothing, creating an inference that he had been involved in other criminal activity. In addition, defendant contends that the limiting instruction given by the trial judge was inadequate. Defendant contends for the first time on appeal that, at the very least, the trial judge should have given the following jury instruction, taken from the Model Jury Charges:

> There are in evidence photographs that were used to identify the defendant in this case.
>
> With reference to the photographs submitted into evidence, you will notice that many or all of the photographs appear to have been taken by a law enforcement agency, or some other government entity.
>
> You are not to consider the fact that the agency obtained a photograph of the defendant as prejudicing him in any way. The photographs are not evidence that the defendant has ever been arrested or convicted of any crime. Such photographs come into the hands of law enforcement from a variety of sources, including but not limited to, drivers license applications, passports, ABC identification cards, various forms of government employment, private employment requiring State regulation, including but not limited to, casino license applications, security guard applications, etc. or from a variety of other sources totally unconnected with criminal activity.
>
> [*Model Jury Charge—Criminal:* Approved 1/6/92.]

Defendant also contends, however, that even this instruction would have been inadequate in light of the fact that it is difficult to explain to a jury a "neutral" innocuous situation where those depicted are dressed in orange uniforms of a type commonly known to be provided to prisoners. Accordingly, he argues that the possibility of neutralizing the prejudice inflicted by such a photograph—as the standard charge contemplates—is minimal. On the other hand, the State contends that the photographic array

was highly relevant in light of the fact that it tended to enhance the reliability of the out-of-court identification made by the victim. He gave the police the first name of the suspected thief. A photographic array was assembled of persons with similar identifying characteristics. Defendant was one of the six persons in the array. The victim picked defendant from the array.

 Here, unquestionably, the photographs were relevant. Relevant evidence is defined as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. The photographs tended to enhance the reliability of the identification made by the victim, and satisfied this broad test of relevancy. Unless otherwise provided in the Rules of Evidence or by law, all relevant evidence is admissible. *N.J.R.E.* 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of undue prejudice. *N.J.R.E.* 403(a). The burden is on the party urging exclusion of the evidence to convince the court that the probative value is substantially outweighed by the risk of undue prejudice. *State v. Carter*, 91 *N.J.* 86, 106, 449 *A.*2d 1280 (1982). The decision is left to the discretion of the trial judge. *Ibid.* The party seeking to exclude the evidence must show that its probative value "is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation" of the basic issues of the case. *State v. Thompson*, 59 *N.J.* 396, 421, 283 *A.*2d 513 (1971).

Here, notwithstanding the broad discretion given the trial judge in determining whether to exclude evidence under *N.J.R.E.* 403(a), we conclude that the decision to admit the photographs of defendant and others in orange jail clothing was incorrect. The probative value of the photographs, particularly in light of the fact they were introduced only to enhance the reliability of the identification, was substantially outweighed by the risk of undue prejudice in bringing to the attention of the jury the fact that defendant had previously been arrested and incarcerated. Moreover, we can

conceive of no instruction which could effectively and realistically neutralize the prejudice to defendant. The photographic array should not have been admitted into evidence.

Having concluded that the admission of the photographs was error, we must consider whether the error was harmless. *R.* 2:10–2. Not every trial error in a criminal case requires a reversal of the conviction. *State v. LaPorte,* 62 *N.J.* 312, 318, 301 *A.*2d 146 (1973). The test of whether an error is harmless depends upon some degree of possibility that it led to an unjust verdict. The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached. *State v. Bankston,* 63 *N.J.* 263, 273, 307 *A.*2d 65 (1973); *State v. Macon,* 57 *N.J.* 325, 335–36, 273 *A.*2d 1 (1971). Here, the evidence of defendant's guilt was overwhelming. The victim knew him from a prior confrontation. Defendant had given the victim his name on two separate occasions. Defendant asked the victim for money before he committed the crime. When the police were called, the victim gave a description to them. A few days later, Officer DeMaria saw defendant nearby asking people for money. In fact, he asked Officer DeMaria for money. He resembled the description given by the victim. He was wearing the same type of hat the victim described. Officer DeMaria obtained defendant's name. A photographic array was assembled. The victim picked defendant out of that photographic array. The victim also identified defendant at trial. Under these circumstances, any error in admitting the photographs was harmless beyond a reasonable doubt. *Macon, supra,* 57 *N.J.* at 336–38, 273 *A.*2d 1. Although we have found the error to be harmless, we strongly disapprove of the admission into evidence of photographs of defendants in jail clothing. It is an error that should not be repeated. If this were a closer case, we would not hesitate to reverse the conviction on that ground alone. We affirm only because of the overwhelming evidence of guilt. *See State v. Jordan,* 147 *N.J.* 409, 688 *A.*2d 97 (1997).

We turn next to defendant's contention that his sentence was excessive and should be reduced to the presumptive extended term with no period of parole ineligibility. Appellate review of sentencing is a three-step process requiring the reviewing court to determine (1) whether the legislatively fixed sentencing guidelines were followed, (2) whether the aggravating factors and mitigating factors found by the trial court were based upon competent, credible evidence in the record and (3) whether application of the guidelines to the facts of the case makes the sentence clearly unreasonable so as to shock the judicial conscience. *State v. Roth,* 95 *N.J.* 334, 364–66, 471 *A.*2d 370 (1984); *State v. Yarbough,* 195 *N.J.Super.* 135, 140, 478 *A.*2d 432 (App.Div.1984), *remanded,* 100 *N.J.* 627, 498 *A.*2d 1239 (1985). On review, an appellate court should not substitute its judgment for that of the trial court. *Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370. The test is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is rather whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review. *Ibid.* This was defendant's tenth indictable conviction. He also had three disorderly persons convictions and had been arrested twenty-nine times as an adult. In fact, defendant committed both this offense and the drug offense after the judge had stayed execution of defendant's county jail sentence so he could be home for the holidays.

Initially, we agree with the trial judge that the protection of the public required the imposition of an extended term. *State v. Dunbar,* 108 *N.J.* 80, 527 *A.*2d 1346 (1987). Defendant contends that because he has a serious drug problem, and he has no violent offenses, he should not have been sentenced to the maximum extended term with the maximum period of parole ineligibility. He asks that the sentence be reduced to the presumptive extended term with no period of parole ineligibility. We disagree. The trial judge found that defendant's prior record was "terrible". He found a substantial risk that defendant would commit another

offense. Finally, he found as an aggravating factor the need to deter. He found no mitigating factors at all. It is not necessary that every sentence be a discourse. *Id.* at 97, 527 *A.*2d 1346. A brief reference to the reasons for imposing the extended term, once the minimal conditions are met, a recital of the specific aggravating and mitigating factors found and their balance, and the reasoning that lead to the choice of the base and parole ineligibility terms will suffice to explain the sentence. *Ibid.* While the trial judge did not explain his reasoning that led to the choice of the base and parole ineligibility terms, it is obvious that he was clearly convinced that the aggravating factors substantially outweighed the mitigating factors. After all, he found no mitigating factors to exist.

When an extended term is imposed, the severity of the sentence imposed should be controlled by the conduct that is the occasion for that sentence. *Dunbar, supra,* 108 *N.J.* at 91, 527 *A.*2d 1346. This was not an ordinary theft from the person. The facts were much closer to a robbery. That fact should be given strong consideration in determining the severity of the sentence. The sentencing judge's remarks at sentence make it abundantly clear that he was guided by these principles. We therefore conclude that the sentence imposed is not manifestly excessive or unduly punitive and does constitute an abuse of discretion. *State v. O'Donnell,* 117 *N.J.* 210, 564 *A.*2d 1202 (1989); *State v. Ghertler,* 114 *N.J.* 383, 555 *A.*2d 553 (1989); *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984).

We next turn to defendant's final contention regarding restitution. When sentence was initially imposed, the trial judge awarded restitution to the victim in the amount of $150. The judgment of conviction provides for restitution in the amount of $326.85. Neither the State nor defendant has provided us with an explanation as to the reason for the difference in amounts. Defendant contends that we should simply amend the judgment of conviction to set forth the correct amount of $150. We decline to do so and remand to the trial court, to conduct a hearing, on notice

to defendant, who should be present with an opportunity to be heard, to determine the proper amount of restitution.

Affirmed, with the exception of the order for restitution which is remanded to the trial court for further proceedings.