**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3676-12T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LATONIA E. BELLAMY a/k/a NA-NA,

    Defendant-Appellant.

_____

        Argued September 12, 2017 — Decided November 8, 2017

        Before Judges Fisher, Sumners and Moynihan.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Indictment No.
        11-03-0348.

        Daniel Rockoff, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender, attorney;
        Al Glimis, Assistant Deputy Public Defender,
        of counsel and on the brief).

        Roseanne Sessa, Assistant Prosecutor, argued
        the cause for respondent (Esther Suarez,
        Hudson County Prosecutor, attorney; Ms. Sessa,
        on the brief).

PER CURIAM

A jury convicted defendant of the first-degree murders of Nia Haqq and Michael Muchioki and other offenses related to a carjacking and robbery. She was sentenced to life and a consecutive thirty-year term. In appealing, defendant contends the trial judge: (1) erred in its jury instructions; (2) allowed prosecutorial misconduct during summations without providing a curative instruction; (3) imposed an excessive sentence; and (4) committed cumulative error. We conclude that, based upon the evidence presented, the trial judge's instructions were appropriate. Also, the prosecutor's summation remarks were fair comment on the evidence and the defense's summation. Consequently, there was no cumulative error, and we therefore affirm the conviction. However, we remand for resentencing as the trial judge failed to adequately explain the application of aggravating factors and his decision not to apply mitigating factor eight as requested by defendant.

I.

Defendant was indicted, along with her cousin, Shiquan D. Bellamy, and Darmelia Lawrence, with multiple counts of first-

degree murder, felony murder, carjacking, robbery, and weapons offenses.  Defendant was tried alone.[1]

At trial, the jury heard testimony from Amanda Muchioki that, at approximately 2:30 a.m. on April 4, 2010, she heard a car pull up in front of her Jersey City home where she lived with her brother, Michael, and his fiancée, Nia.  Amanda heard a male voice say "get out of the car" that was followed by "a loud bang."  She looked out the window but could not identify the "two people standing at the car" or ascertain their gender.  As Amanda ran to another room to obtain her cellphone to call 911, she heard "three more shots."  She estimated these other shots - described as three "smaller explosion[s]" - occurred approximately "ten, [fifteen] seconds" after the first "big bang."  After calling 911 to report the incident, Amanda remained out of sight because she feared someone would enter the home.  When police arrived approximately five minutes later, Amanda went outside and saw the gunshot bodies of Michael and Nia, laying on the ground outside of Nia's black SUV.

_____

[1] Shiquan was tried separately, and convicted of multiple counts of murder, felony murder, carjacking, robbery, weapons offenses, and conspiracy to commit robbery.  Lawrence pled guilty to two counts of robbery and agreed to cooperate with the prosecution. She testified on behalf of the State against Shiquan but did not testify at defendant's trial.

Another neighbor testified that, after she heard a "loud boom," she ran to her second-floor window to see three individuals, whom she described as consisting of one male and two female African-Americans, get into a black SUV.  The witness went back to bed but then heard three other "pops" which she knew were "gunshots," which caused her to call the police.  She looked out the window again to see the three individuals get out of the vehicle and run down the street.

In the follow-up investigation, the prosecutor's office interrogated Lawrence after finding her fingerprints on Nia's vehicle.  Because of her interrogation, the prosecutor's office asked defendant to come in for questioning.  Defendant voluntarily reported to the prosecutor's office, and after being advised of her Miranda[2] rights, she gave a video-recorded statement implicating herself, Lawrence, and Shiquan[3] in the murder, carjacking and robbery of Michael and Nia, which was played to the jury.

Defendant stated they left a party, and went to an apartment where Shiquan retrieved a shotgun and 9 mm handgun.  When they

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] We use his first name because he has the same last name as defendant.

left the apartment with no specific destination in mind, she possessed the handgun and Shiquan had the shotgun. They eventually came across the victims outside a vehicle, when Shiquan ordered them to the ground and "to give [him] everything." Despite their compliance, Shiquan shot Michael in the head with the shotgun. Defendant stated she fired two shots from the handgun towards Nia, but did not know whether the bullets hit Nia. She claimed Shiquan then told her to give him the handgun, which he used to shoot Nia in the head. They got in the vehicle, but after a locking device on the steering wheel prevented them from driving away, they got out and ran back to the apartment. While in route, Shiquan discarded the wallets containing credit cards, driver's license, and cellphone, but gave defendant twenty to forty dollars taken from the victims. The discarded items were located by police in their search of the crime scene or were later turned over to police by a neighborhood resident.

The jury also heard testimony from the county medical examiner. An autopsy of Michael's body demonstrated he died from a near contact shotgun wound to his head and a gunshot wound to his buttocks, delivered from a distance greater than eighteen inches. An autopsy of Nia's body revealed she died from gunshots from a distance greater than eighteen inches to the back of her

head and her left thigh that appeared to have hit the pavement before entering her body.

Defendant testified on her behalf. She stated she was not aware of Shiquan's plans to rob, shoot or carjack anyone, and did not willingly participate in such crimes. She admitted telling Shiquan before they left the apartment that she wanted to fire a gun but asserted she did not intend to shoot at anyone when they went outside. She claimed Shiquan directed her to shoot Nia but she only shot at the ground because she did not have the heart to shoot her. She stated her fear of what Shiquan might do to her, made her accept the victims' stolen money from him and kept her from leaving when she realized what Shiquan was doing.

The jury found defendant guilty of first-degree purposeful or knowing murder of Nia, N.J.S.A. 2C:11-3(a)(1) and (2); four counts of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); two counts of first-degree carjacking, N.J.S.A. 2C:15-2; two counts of first-degree robbery, N.J.S.A. 2C:15-1; two counts of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and second-degree conspiracy to commit robbery,[4] N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2. She was found not guilty of Michael's murder and some weapons offenses. She was sentenced

---

[4] Subsequently dismissed upon the State's motion.

6

to a life term subject to the No Early Release Act (NERA), <u>N.J.S.A.</u> 2C:43-7.2, for Nia's murder, and a consecutive thirty-year term subject to NERA for felony murder of Michael.  After merger and imposition of consecutive terms, she will have to serve ninety-three and three-quarter years before being eligible for parole.

II.

Before us, defendant argues:

<u>POINT I</u>

A CRITICAL SECTION OF THE ACCOMPLICE LIABILITY CHARGE THAT CAUTIONED THE JURY THAT MERE PRESENCE AT OR NEAR THE SCENE DOES NOT MAKE ONE A PARTICIPANT IN THE CRIME WAS OMMITTED.

<u>POINT II</u>

THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY ON THE DEFENSE OF DURESS WHICH WAS CLEARLY INDICATED BY THE EVIDENCE AT TRIAL. THE ERROR DEPRIVED DEFENDANT OF THE RIGHT OF DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW).

<u>POINT III</u>

THE TRIAL COURT'S DENIAL OF DEFENDANT'S REQUEST TO CHARGE THE JURORS ON THEFT BY RECEIVING STOLEN PROPERTY, AS A LESSER INCLUDED OFFENSE OF ROBBERY, DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.

<u>POINT IV</u>

THE PROSECUTOR, IN SUMMATION, DENIGRATED THE DEFENSE AND COMMENTED ON FACTS NOT IN EVIDENCE.  AS DEFENDANT TIMELY OBJECTED TO THESE COMMENTS, THE TRIAL COURT'S FAILURE TO

7

SUSTAIN DEFENDANT'S OBJECTION AND ISSUE A CURATIVE INSTRUCTION DENIED DEFENDANT A FAIR TRIAL.

POINT V

THE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF EACH INDIVIDUAL ERROR DOES NOT REQUIRE REVERSAL, THE AGGREGATE OF THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL.

POINT VI

THE IMPOSITION OF OVER NINETY-THREE YEARS OF PAROLE INELIGIBILITY WAS A MANIFESTLY EXCESSIVE SENTENCE UNDER ALL OF THE APPLICABLE CIRCUMSTANCES.

A.

Defendant's initial three points challenge the trial judge's jury instructions. "Clear and correct jury instructions are essential for a fair trial." State v. Randolph, 441 N.J. Super. 533, 558 (App. Div. 2015), aff'd, 228 N.J. 566 (2017) (citing State v. Brown, 138 N.J. 481, 522 (1994)). "'[E]rroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant." State v. Baum, 224 N.J. 147, 159 (2016) (citing State v. Bunch, 180 N.J. 534, 542 (2004)). However, "[n]o party is entitled to have the jury charged in his or her own words; all that is necessary is that the charge as a whole be accurate." State v. Jordan, 147 N.J. 409, 422 (1997).

Thus, when the trial judge does not give a jury a charge requested by defendant, we must determine if the omission of the charge was not harmless error. See State v. Macon, 57 N.J. 325, 337-38 (1971). "The test of whether an error is harmless depends upon some degree of possibility that it led to an unjust verdict." State v. Burton, 309 N.J. Super. 280, 289 (App. Div.), certif. denied, 156 N.J. 407 (1998). "If the possibility of an unjust result is sufficient to raise in our minds a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached, a new trial is required." State v. Walden, 370 N.J. Super. 549, 562 (App. Div.), certif. denied, 182 N.J. 148 (2004).

Defendant first argues that the trial judge mistakenly believed he instructed the jury on the "mere presence"[5] portion of

---

[5] Pursuant to the Criminal Model Jury Charge, "Liability for Another's Conduct," the "mere presence" portion of the accomplice liability charge is as follows:

> Mere presence at or near the scene does not make one a participant in the crime, nor does the failure of a spectator to interfere make him/her a participant in the crime. It is, however, a circumstance to be considered with the other evidence in determining whether he/she was present as an accomplice. Presence is not in itself conclusive evidence of that fact. Whether presence has any probative value depends upon the total circumstances. To constitute guilt there must exist a

the accomplice liability charge when he gave his initial instruction.  She also points out that the judge did not instruct on "mere presence" when he recharged the jury in response to a jury question on accomplice liability.  She asserts this portion of the charge "would have informed the jury that it needed to examine the totality of the circumstances as those circumstances appear in the evidence in order to determine whether she was an accomplice to Shiquan . . . ."  We are unpersuaded.

Defendant's testimony and her statement to police do not support a "mere presence" charge.  She voluntarily took a loaded handgun from Shiquan, knowing he had a loaded shotgun, and went out to the Jersey City streets.  She admitted that, during the

---

community of purpose and actual participation in the crime committed.

While mere presence at the scene of the perpetration of a crime does not render a person a participant in it, proof that one is present at the scene of the commission of the crime, without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is possible for the jury to infer that he/she assented thereto, lent to it his/her countenance and approval and was thereby aiding the same.  It depends upon the totality of the circumstances as those circumstances appear from the evidence.

[Model Jury Charge (Criminal), "Liability for Another's Conduct (N.J.S.A. 2C:2-6) Accomplice" (1995).]

commission of the robbery, she fired the handgun at Nia after Shiquan had already shot Michael.

Furthermore, we are convinced the accomplice liability instruction given by the judge, adequately addressed the defendant's position that she was not an active participant in the crimes. The judge charged the jury:

> Before turning to the distinctions between these forms of homicide, you need to understand how the law assigns responsibility for the commission of a crime.
>
> As relevant in this case, a person can be held responsible for the commission of a crime in two ways.
>
> First, if the person actually commits this crime, he is a[s] accountable as a principal. Another way a person can be responsible is as an accomplice to the person who actually commits the crime.
>
> A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he or she either solicits such other person to commit it and/or aids or agrees to aid such person in planning or committing it.
>
> . . . .
>
> Now[,] Count 17 charges the [d]efendant with the murder of Michael Muchioki. The State does not contend that this [d]efendant fired the shot which brought about his death. However, they do allege that this [d]efendant was an accomplice of Shiquan Bellamy, the principal.

11

Count 24 charges this [d]efendant with the murder of Nia Haqq. The State contends that this [d]efendant actually fired the fatal shot resulting in her death. Alternatively, they argue that even if she did not fire that shot, she is legally accountable for the murder of Ms. Haqq as an accomplice to Shiquan Bellamy, the person who fired the shot.

The [d]efendant argues she did not fire the fatal shot to Ms. Haqq, nor was she an accomplice to Shiquan Bellamy insofar as she did not have the purpose to murder either Ms. Haqq or Mr. Muchioki.

Whether or not the [d]efendant bears responsibility for either or both murders will depend therefore upon your findings of fact as they relate to what, if any, role she played in this event, and what her purpose was.

If you find the State has proved beyond a reasonable doubt that this [d]efendant purposefully or knowingly fired the fatal shot to Ms. Haqq and caused her death, then she would be guilty of her murder as a principal.

If you find the State has not proved beyond a reasonable doubt that she fired a fatal shot, but find that she, having the purpose to murder Ms. Haqq, aided or assisted Shiquan Bellamy in committing the murder, then she would be guilty of her murder as his accomplice.

If you find that this [d]efendant aided or assisted Shiquan Bellamy in the commission of the offense, but that she did not share with him the purpose to cause her death, but rather to cause some lesser injury, then she would not be guilty of murder, but guilty of the lesser offense as his accomplice.

If you find the State has failed to prove beyond a reasonable doubt that the [d]efendant

> fired the fatal shot to Ms. Haqq, or that she
> acted as Shiquan Bellamy's accomplice in
> either murder, then she must be found not
> guilty of the murder of Ms. Haqq or Mr.
> Muchioki.

Hence, we find no error in the judge's jury instructions. Indeed, even if the judge could be said to have erred in failing to give greater emphasis to defendant's alleged "mere presence" at the crime scene, such an error would be harmless because it could not produce an unjust result.

Defendant next argues the trial judge failed to sua sponte charge the jury with the affirmative defense of duress. She claims the judge should have done so based upon her testimony that she denied any intent to rob or kill anyone and that she failed to leave Shiquan during the crime because he was armed with a shotgun during the entire incident and she feared him. We disagree.

Since defendant did not request a jury instruction for the affirmative defense of duress, the plain error standard applies. State v. Burns, 192 N.J. 312, 341 (2007) (citing R. 2:10-2; State v. Torres, 183 N.J. 554, 564 (2005)). With regard to a jury charge,

> plain error requires demonstration of "[l]egal
> impropriety in the charge prejudicially
> affecting the substantial rights of the
> defendant sufficiently grievous to justify
> notice by the reviewing court and to convince
> the court that of itself the error possessed

13

a clear capacity to bring about an unjust result."

[Ibid. (alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).]

N.J.S.A. 2C:2-9, defines duress as:

an affirmative defense that the actor engaged in the conduct charged to constitute an offense because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.

Under N.J.S.A. 2C:2-9, "the burden [is] on the defendant to come forward with some evidence of the defense and the burden of proof on the State to disprove the affirmative defense beyond a reasonable doubt." State v. Romano, 355 N.J. Super. 21, 35-36 (App. Div. 2002) (citation omitted). In addition, Rule 3:12-1 provides that a defendant intending to raise the defense of duress must give written notice to the prosecutor "[n]o later than seven days before the Initial Case Disposition Conference . . . . If a party fails to comply with this Rule, the court may take such action as the interest of justice requires" including an adjournment or an extension of time. The Rule, however, does not obligate a judge to sua sponte consider such relief. The court's duty to act sua sponte "arises only when the record evidence

clearly indicates the need for or clearly warrants [action]." See State v. Rivera, 205 N.J. 472, 489 (2011) (citation omitted).

Applying these guidelines, we are satisfied the judge did not commit plain error by not giving the jury a duress charge. Defendant did not provide proper notice of such defense, and has not demonstrated that in the interest of justice she should have been allowed to make an untimely request. Moreover, the record does not indicate duress applies here, where there was no evidence of defendant being coerced or threatened by Shiquan to fire the handgun at Nia or participate in the offenses committed that early morning. Despite defendant's testimony that, after Shiquan shot Michael and before she fired two shots at Nia, Shiquan told her, "you want to shoot a fucking gun, shoot the gun," and "shoot the fuckin gun," there is no evidence that she was forced to shoot. In fact, Shiquan's assertion amplifies defendant's testimony that when Shiquan gave her the handgun, she stated she "always wanted to shoot a gun[,]" which belies her claim she was not a willing participant in the criminality that occurred.

In addition, while defendant testified she thought they were only going to shoot the gun "in the air" or possibly at some cans, she admitted that she had a gut feeling "something was gonna happen." When asked why she did not turn around or stop what she was doing, she replied "[c]ause that's my cousin and I wanted to

go with him . . . [h]e's like my brother." Significantly, defendant neither testified nor presented any evidence that Shiquan pointed his shotgun at her or otherwise threatened her to do anything.

Defendant's last contention concerning jury instructions involves the trial judge's refusal of her request to instruct the jury on theft by receiving stolen property as a lesser-included offense of second-degree robbery. She argues the instruction was merited because she testified she had no intention to rob the victims and her receipt of twenty to forty dollars from Shiquan indicated she could be found guilty of theft by receiving stolen property rather than robbery. We disagree.

When a defendant requests a charge on a lesser-included offense, the trial court applies a two-prong test to determine if the charge should be given: "whether an included offense charge is appropriate requires (1) that the requested charge satisfy the definition of an included offense set forth in N.J.S.A. 2C:1-8(d),[6]

---

[6] N.J.S.A. 2C:1-8(d) states an offense is a lesser-included offense when:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

and (2) that there be a rational basis in the evidence to support a charge on that included offense."  State v. Thomas, 187 N.J. 119, 131 (2006).

The court must consider "whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser."  State v. Brent, 137 N.J. 107, 117 (1994).  "[S]heer speculation does not constitute a rational basis.  The evidence must present adequate reason for the jury to acquit the defendant on the greater charge and to convict on the lesser."  Id. at 118-19 (citations omitted).  "'[A] contention that the jury might accept the prosecution's evidence in part and might reject it in part ought not to be sufficient.'"  Id. at 115 (citing Model Penal Code § 1.08 cmt. at 42-43 (Tentative Draft No. 5, 1956) (citations omitted)).

Defendant was charged with robbery, which occurs when:

> . . . in the course of committing a theft, he:

(2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or

(3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

[N.J.S.A. 2C:15-1(a).]

The crime of theft of receiving stolen property occurs when a person "knowingly receives . . . movable property of another knowing that it has been stolen, or believing that it is probably stolen . . . . 'Receiving' means acquiring possession, control or title, or lending on the security of the property." N.J.S.A. 2C:20-7.

Our court has concluded that theft is a lesser-included offense of robbery, and it is appropriate to charge theft if "there is a question whether the defendant's act of 'inflict[ing] bodily injury,' 'us[ing] force upon another' or 'threat[ening] another with [or] purposefully put[ting] him in fear of bodily injury' occurred 'in the course of committing a theft.'" State v. Harris, 357 N.J. Super. 532, 539 (App. Div. 2003) (alterations in original)

(citing <u>State v. Jordan</u>, 240 <u>N.J. Super.</u> 115, 120-21 (App. Div.), <u>certif. denied</u>, 122 <u>N.J.</u> 328 (1990)).

Here, defendant's admission that she fired two shots while the victims were on the ground leaves no doubt that she either inflicted bodily injury or threatened immediate bodily injury on the victims during the theft. Thus, there is no evidence supporting a rational basis for an instruction of theft by receiving stolen property.

B.

Defendant contends in Point IV that she was denied a fair trial based upon two comments by the prosecutor during his closing argument. First, defense counsel objected, contending it was not "fair comment," and the prosecutor was "characterizing and mischaracterizing" defendant, when the prosecutor maintained:

> While I was sitting here, I couldn't believe he said this. He said — . . . you are going to get more law than you need. You never get more law than you need, ever.
>
> What does he want you to do? Just sort of like go in there and decide well, you know, she dressed nice when we first saw her. She had those nice little glasses on that made her look like a librarian. She's probably not a bad person. Yeah, okay, I am sure she's sorry for what she did. Is that what he wants you to do.

The judge denied the objection, explaining the prosecutor was referring to a statement by defense counsel,[7] and that the prosecutor is "entitled to frame his argument as he sees it. . . [t]hat is comment on what [defense counsel] said."

Second, the prosecutor made the following comment, which defense counsel objected to, that: "[l]et me throw just one more thing here that I want to talk about.  Here is where that spent cartridge was found.  Remember that, and you'll notice where it's in proximity to Nia's head, right here, okay."  Defense counsel argued this remark misled the jury because the detective could not conclude whether a particular shell was attributed to a particular bullet.

The judge denied the objection, explaining:

> [The prosecutor] is commenting on the state of the evidence.  He's not testifying that that's the bullet that hit her in the head.

---

[7] During summation, defense counsel said:

> Before you can even arrive at determining whether or not the [j]udge will instruct you and I caution you, you are going to get a lot of law.  However, you apply the law to those facts you find.  If your facts don't size up to the law you're getting, you just move on. You and you alone are the absolute ultimate fact-finders here.
>
> So you're going to get more law than you need. Trust me.  The facts, the few facts that you would find about her involvement, it's that what you apply the law to.

> It is, nonetheless, a possibility, and a fair inference for the jury to draw. He's suggesting an inference from the evidence.
>
> The evidence is, the cartridge casing was found where he's indicated and it is fair to suggest how it got there.

Further, in response to defense counsel's contention that there was no expert testimony to support the prosecutor's assertion, the judge reasoned:

> The evidence indicates where the casing was found. He's free to suggest how it got there. Doesn't have to have an expert opinion that that bullet and that casing were at one time together. It is not necessary to make the comment.

A defendant's conviction should only be reversed due to prosecutorial wrongdoing "where the . . . misconduct was so egregious that it deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999) (citations omitted). While a prosecutor "in . . . summation may suggest legitimate inferences to be drawn from the record," a prosecutor "commits misconduct when [the summation] goes beyond the facts before the jury." State v. Harris, 156 N.J. 122, 194 (1998). The misconduct "must have been 'clearly and unmistakably improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 575 (1999), cert. denied, 534 U.S.

858, 122 <u>S. Ct.</u> 136, 151 <u>L. Ed.</u> 2d 89 (2001). In this case, none of the prosecutor's remarks compromised the ability of the jury to fulfill its fact-finding function. We agree with the trial judge's rulings for the reasons set forth in his oral decisions. Moreover, the judge instructed the jury that they are the sole judges of the evidence and that summations are not evidence and should not be treated as such. And we presume the jurors followed the court's instructions. <u>State v. Montgomery</u>, 427 <u>N.J. Super.</u> 403, 410 (App. Div. 2012), <u>certif. denied</u>, 213 <u>N.J.</u> 387 (2013).

C.

Given our conclusions that there were no trial errors, there can be no cumulative errors as contended in Point IV that could have denied defendant a fair trial.

### III.

Finally, we turn to defendant's argument that her sentence is excessive because the record did not support the judge's weighing of aggravating and mitigating factors. Defendant specifically contends the judge should not have applied aggravating factors one, three, and nine. <u>N.J.S.A.</u> 2C:44-1(a)(1) (the nature and circumstances of the offense); -1(a)(3) (the risk of re-offense); -1(a)(9) (need to deter defendant and others from violating the law). She further asserts the judge did not give

proper weight to mitigating factor seven and failed to apply mitigating factor eight. N.J.S.A. 2C:44-1(b)(7) (lack of criminal record); -1(b)(8) (circumstances unlikely to occur). Defendant also maintains that the judgment of conviction (JOC) incorrectly provides that the judge applied aggravating factors two and four, which he did not mention in his oral decision sentencing defendant.

We begin by noting that review of a criminal sentence is limited; a reviewing court must decide "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (citing State v. Whitaker, 79 N.J. 503, 512 (1979)). Under this standard, a criminal sentence must be affirmed unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not based upon competent credible evidence in the record; or (3) the application of the guidelines to the facts of the case shock[s] the judicial conscience." Ibid. (alteration in original) (citation omitted). "In general, a trial court should identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citations omitted). If a sentencing court properly identifies and balances the factors, and their existence is supported by sufficient credible evidence in

the record, this court will affirm the sentence.  See State v. Carey, 168 N.J. 413, 426-27 (2001).  A sentencing court, however, must avoid "double-counting" facts that establish the elements of the relevant offense in making that determination.  State v. Fuentes, 217 N.J. 57, 74-75 (2014).

Applying these principles, we are constrained to remand for resentencing.  In setting forth his basis for applying aggravating factor three, the judge took into consideration reasons related to aggravating factor one when he determined:

> I also find aggravating factor [three] applies, the risk of this defendant's re-involvement.  While an actor's prior record is usually a fairly accurate predictor for future behavior, in this case I find it is not.  This defendant's lack of prior involvement with the criminal justice system and her pursuit of higher education would, using the ordinary paradigm, contraindicate homicide or other antisocial behavior. However, the facts here have proven that model to be inapplicable here, and lead me to conclude that this defendant does not possess normal impulse control, and is capable of both random and extreme violence.  If she were released, it is highly likely she would reoffend.

This constitutes double-counting of aggravating factor one.  In addition, we agree with defendant that there is no basis in the record for finding she lacks normal impulse control, which would lead her to re-offend.  Accordingly, the judge should not have applied aggravating factor three.

24

We also conclude the judge did not address why the requested mitigating factor eight was not considered. On remand, the judge should do so. The judge should also correct the JOC, which incorrectly states aggravating factors two and four were applied. See State v. Abril, 444 N.J. Super. 553, 564-65 (App. Div.) (requiring a remand where the JOC erroneously notes a finding of aggravating factor one, which the record confirms the court explicitly did not find, the judgment must be corrected for that error), certif. denied, 226 N.J. 213 (2016). We take no issue with the judge's application of aggravating factors one and nine and mitigating factor seven because the record supports the judge's reasoning.

We affirm the conviction, but reverse and remand for resentencing consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3676-12T2