# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3507-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

L.B.,

     Defendant-Appellant.

_____

> Submitted December 2, 2020 – Decided January 6, 2021
>
> Before Judges Vernoia and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-03-0206.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Zachary G. Markarian, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Daniel Finkelstein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant L.B.[1] appeals from his conviction by a jury of second-degree sexual assault. He contends the trial court violated his right to a fair trial and to fully confront the witnesses against him by barring cross-examination of the victim R.P.S. about her illegal entry into the United States fourteen years prior to the sexual assault. Unpersuaded, we affirm.

I.

Because defendant's appeal presents a narrow issue for our consideration, we limit our summary of the pertinent facts to those necessary to provide context for our analysis of defendant's argument.

A grand jury charged defendant in an indictment with second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1), by committing one or more acts of sexual penetration on R.P.S. by using physical force. At the commencement of the trial, the court granted defendant's request for a Rule 104 hearing, see N.J.R.E. 104, to determine the allowable scope of R.P.S.'s testimony concerning her immigration status. Defendant sought to cross-examine R.P.S. about her immigration status to establish she had a motive to falsely allege she had been sexually assaulted.

---

[1] Defendant and the victim of the sexual assault for which he was convicted are husband and wife. We use initials to identify defendant and the victim to ensure the victim's identity is protected from public access. See R. 1:38-3(c)(12).

During the hearing, R.P.S. testified she is married to defendant, who is a United States citizen, and that the couple's two children are also citizens. She explained she entered the United States in 2000 without a visa, but she was presently in the country legally because she had a work permit. R.P.S. testified that prior to the December 8, 2014 sexual assault alleged in the indictment, she began the process of applying for citizenship, and, at the time of trial, the process was ongoing. She also testified her work permit was scheduled to expire in June 2017, three months following the trial.

R.P.S. testified she is aware a person may gain United States citizenship by being married to a citizen such as defendant, and she also understood that a person may gain citizenship if he or she is the victim of a crime. R.P.S. denied fabricating the allegation she was the victim of sexual assault to further her efforts to obtain citizenship.

Defense counsel argued she should be permitted to cross-examine R.P.S. at trial about her immigration status, including her illegal entry into the country without a visa in 2000, to establish she had a motive to fabricate the alleged sexual assault. The State argued that information about R.P.S.'s immigration status and entry into the country was not probative and was unduly prejudicial.

A-3507-18T2

The court ruled that defense counsel could question R.P.S. at trial about her immigration status at the time of the incident, her process of applying for citizenship, and her knowledge about the effect being a crime victim might have on her citizenship application. The court, however, denied defense counsel's request to question R.P.S. at trial about how she entered the United States, finding it was "tantamount to [N.J.R.E.] 404[(b)] evidence."

At trial, R.P.S. testified she married defendant in 2005, their relationship began to deteriorate in 2011, and, by the end of 2013, defendant no longer resided with R.P.S. They remained in contact, however, to communicate about their children.

According to R.P.S., on December 6, 2014, defendant informed R.P.S. he had fathered a child with another woman. Two days later, defendant went to R.P.S.'s apartment to drop off items for one of the children. R.P.S. asked defendant to leave the items and her apartment, but defendant locked the apartment door and followed R.P.S. to the bedroom, where she had retreated after asking defendant to leave. Defendant attempted to show R.P.S. a photograph of his new child, but R.P.S. did not want to see it and again asked defendant to leave.

R.P.S. testified defendant then pushed her onto the bed, pulled his and her pants down, held R.P.S.'s hands over her head, and vaginally penetrated her with his penis. During the assault, R.P.S. attempted to stop defendant and bit his lip, leaving blood stains on her shirt. When defendant got up, he told R.P.S. that she belonged to him, and he left the apartment. R.P.S. reported the incident to the police.

During cross-examination, defense counsel questioned R.P.S. about her current immigration status, but, consistent with the court's determination at the Rule 104 hearing, counsel did not inquire about whether R.P.S. entered the United States illegally in 2000. Similar to her testimony at the Rule 104 hearing, R.P.S. testified she is married to defendant, who is a United States citizen, and that she is not a United States citizen. She denied she applied for United States citizenship and explained she applied "at least [for] the [g]reen [c]ard." When asked if she was "trying to get a legal status in the United States," R.P.S. explained she "ha[d] a working permit." R.P.S. testified she is aware a person can gain citizenship by being married to a United States citizen or by being a

victim of domestic violence. She further testified she wanted to stay in the United States with her children, who are citizens.[2]

The court held a charge conference on the proposed jury instructions. Defendant argued the court should charge the jury in accordance with Model Jury Charge (Criminal), "Credibility—Immigration Consequences of Testimony" (rev. June 6, 2016). The court determined the immigration charge was not appropriate because the charge applies where the witness is in the United States illegally, and R.P.S.'s testimony established she was in the United States legally. The court did not give the requested charge, but it permitted defense counsel to argue R.P.S.'s immigration status provided a motive to falsely claim she was the victim of a crime.

During closing arguments, defense counsel offered numerous reasons R.P.S.'s testimony about the sexual assault was not credible. Counsel argued R.P.S. provided inconsistent versions about what occurred to the police and at trial, she failed to report important alleged facts to the police, and her version of the sexual assault was illogical and did not make sense. Defendant also asserted R.P.S. had multiple motives to fabricate the sexual assault, including defendant's

---

[2] The State called other witnesses at trial, but their testimony is irrelevant to a determination of the issue presented on appeal. Defendant did not present any witnesses at trial.

A-3507-18T2

history of being unfaithful to her, his fathering of a child with another woman, and her desire to obtain citizenship so she could stay in the United States with her children.

The jury found defendant guilty of second-degree sexual assault. The court determined defendant should be sentenced within the third-degree range, see N.J.S.A. 2C:44-1(f)(2), and imposed a four-year prison term subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2, parole supervision for life, N.J.S.A. 2C:43-6.4, and compliance with the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23. This appeal followed.

II.

Defendant presents the following argument for our consideration.

POINT I

THE TRIAL COURT DEPRIVED [DEFENDANT] OF HIS RIGHT TO PRESENT A COMPLETE DEFENSE AND HIS RIGHT TO CONFRONT THE WITNESSES AGAINST HIM BY PROHIBITING CROSS-EXAMINATION OF [R.P.S.] REGARDING THE FULL CONTEXT OF HER IMMIGRATION STATUS.

We review a trial court's decision to admit or exclude evidence using the abuse of discretion standard. State v. Brown, 463 N.J. Super. 33, 51 (App. Div. 2020). "[W]e will reverse an evidentiary ruling only if it 'was so wide [of] the

mark that a manifest denial of justice resulted.'" Ibid. (alteration in original) (citation omitted). "Although a trial court retains broad discretion in determining the admissibility of evidence, that discretion is abused when relevant evidence offered by the defense and necessary for a fair trial is kept from the jury." State v. Cope, 224 N.J. 530, 554-55 (2016).

Our federal and state constitutions "guarantee a criminal defendant the right to confront 'the witnesses against him' and 'to have compulsory process for obtaining witnesses in his favor.'" State v. Guenther, 181 N.J. 129, 147 (2004) (quoting U.S. Const. amend. VI and N.J. Const. art. I, ¶ 10). These rights are "essential for a fair trial." Ibid.; see also State v. Garron, 177 N.J. 147, 169 (2003). "Confrontation means more than being allowed to confront the witness physically." Davis v. Alaska, 415 U.S. 308, 315 (1974). It means the defendant is guaranteed the right to cross-examine the witness, id. at 315-16, because cross-examination is "the most effective means of testing the State's evidence and ensuring its reliability," Guenther, 181 N.J. at 147; see also State v. Medina, 242 N.J. 397, 412-13 (2020).

Although the rights to confront witnesses and present a complete defense are guaranteed, they are "not unqualified," State v. Kane, 449 N.J. Super. 119, 136 (App. Div. 2017), and they are "not intended to sweep aside all evidence

rules regulating the manner in which a witness is impeached," Guenther, 181 N.J. at 150 (citing Davis, 415 U.S. at 321 (Stewart, J., concurring)). As our Supreme Court explained in State v. Scott, Rule 607 allows the use of extrinsic evidence "for the purpose of impairing or supporting" a witness's credibility, 229 N.J. 469, 481 (2017) (quoting N.J.R.E. 607 (1992) (amended 2019)), "unless an exception within that rule applies or either Rule 405 or 608 renders the evidence inadmissible," ibid. Rules 405 and 608 "preclude the use of specific instances of conduct to attack the credibility of a witness." Ibid. Evidence of "[s]pecific instances of conduct not the subject of a conviction of a crime [is] inadmissible" under Rule 405. Ibid. (first alteration in original) (quoting N.J.R.E. 405 (1992) (amended 2019)). Under Rule 608, "'a trait of character cannot be proved by specific instances of conduct' unless the prior act was a 'false accusation against any person of a crime similar to the crime with which [the] defendant is charged.'" Ibid. (quoting N.J.R.E. 608 (2006) (amended 2019)). Even "relevant evidence may also be excluded on the ground that 'its probative value is substantially outweighed by the risk of . . . undue prejudice.'" Ibid. (alteration in original) (quoting N.J.R.E. 403 (1992) (amended 2019)).

In State v. Sanchez-Medina, the Court considered the prejudicial effect of evidence concerning a person's immigration status, explaining that, "[a]s a

general rule, that type of evidence should not be presented to a jury." 231 N.J. 452, 462 (2018). The Court found that "[i]n most cases, the immigration status of a witness or party is simply irrelevant, and a jury should not learn about it," id. at 463, because disclosure of a person's "illegal status in this country is very likely to trigger negative sentiments in the minds of some jurors," id. at 464 (quoting Serrano v. Underground Utils. Corp., 407 N.J. Super. 253, 274 (App. Div. 2009)). The Court, however, explained that evidence concerning a witness's or party's immigration status is admissible in "limited" and "rare" circumstances, such as where a witness is "promised . . . favorable immigration treatment in exchange for truthful testimony" or where a "defendant . . . lied about his immigration status to obtain government benefits as part of scheme to defraud, [and] his true status [is] relevant to the crime charged." Id. at 463.

Here, we discern no abuse of the court's discretion in allowing evidence concerning R.P.S.'s immigration status, and limiting the evidence to only that which was necessary to establish she had a motive—her understanding a citizenship application would be aided if she was the victim of a crime—to falsely allege defendant sexually assaulted her. Defense counsel elicited the pertinent testimony and created a record supporting her argument to the jury that

R.P.S. had a motive related to her immigration status to falsely accuse defendant and the jury should not believe R.P.S.'s testimony for that reason.

We reject defendant's claim the court erred by preventing him from also eliciting testimony concerning R.P.S.'s illegal entry into the United States in 2000. That information is wholly irrelevant to defendant's claim R.P.S. had a motive in 2014 to falsely accuse him of sexual assault, and there is no evidence that any issues related to her entry into the United States might affect her quest for either citizenship or a green card. At the Rule 104 hearing, defense counsel claimed evidence concerning R.P.S.'s illegal entry was "extremely probative" because it showed she knew she was going to later need assistance to gain citizenship. We disagree. What R.P.S. understood when she entered the country in 2000 was not an issue at trial, and evidence concerning her entry did not have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401; see Verdicchio v. Ricca, 179 N.J. 1, 33-34 (2004) ("To say that 'evidence is irrelevant in the sense that it lacks probative value' means that it 'does not justify any reasonable inference as to the fact in question.'" (quoting State v. Allison, 208 N.J. Super. 9, 17 (App. Div. 1985))). She accused defendant of sexual assault in 2014, and it was the knowledge she possessed at that time and at trial about obtaining citizenship or

a green card that is probative of her motives for accusing defendant of sexual assault. Moreover, there is no evidence R.P.S.'s desire for citizenship or pending application for a green card would be affected by the circumstances related to her entry to the country.

We are convinced the court properly excluded evidence R.P.S. entered the country illegally because it was not relevant. N.J.R.E. 401. Additionally, even if such evidence had some probative value—and defendant points to none supported by the trial record—its value would have been "'so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the basic issue[s].'" Serrano, 407 N.J. Super. at 274-75 (alterations in original) (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 491 (1999)); see also Morales-Hurtado v. Reinoso, 457 N.J. Super. 170, 192 (App. Div. 2018), aff'd 241 N.J. 590 (2020). The evidence was therefore inadmissible under Rule 403 and was properly excluded by the trial court.

We next consider defendant's claim the court incorrectly found N.J.R.E. 404(b) barred the admission of evidence concerning R.P.S.'s entry into the United States. Where, as here, a defendant seeks to use other-crime evidence defensively, the court must determine if the evidence is relevant under Rule 401,

State v. Williams, 240 N.J. 225, 234-35 (2019), and, if so, whether it should be excluded under Rule 403, id. at 237-38. For the reasons we have explained, evidence concerning R.P.S.'s entry into the country is not relevant under Rule 401 and is otherwise inadmissible under Rule 403.

We reject defendant's claim the court's determination should be reversed because it did not conduct its analysis under the applicable evidentiary rules. We review a trial court's orders, not its reasoning, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001); see also Scott, 229 N.J. at 479, and "we may 'affirm the trial court's decision on grounds different from those relied upon by the trial court,'" State v. Armour, 446 N.J. Super. 295, 310 (App. Div. 2016) (quoting State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011)). Although our reasoning differs from the trial court's, the court correctly barred admission of the evidence concerning R.P.S.'s entry into the United States.

Defendant also contends the court erred by denying his request to charge the jury pursuant to Model Jury Charge (Criminal), "Credibility—Immigration Consequences of Testimony" (rev. June 6, 2016). Where the trial court does not give a jury a charge requested by defendant, we review the court's decision for harmless error. See Hedgpeth v. Pulido, 555 U.S. 57, 60-61 (2008); see also State v. Camacho, 218 N.J. 533, 550-52 (2014) (holding a trial court's failure to

instruct the jury regarding a defendant's election not to testify upon the defendant's request is "subject to the . . . harmless-error analysis").  We must determine "whether in all the circumstances there [is] a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits."  State v. Macon, 57 N.J. 325, 338 (1971).  "[W]hether an error is harmless depends upon some degree of possibility that it led to an unjust verdict.  The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached."  State v. Burton, 309 N.J. Super. 280, 289 (App. Div. 1998).  "If the possibility of an unjust result is sufficient to raise in our minds a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached, a new trial is required." State v. Walden, 370 N.J. Super. 549, 562 (App. Div. 2004).

We are not convinced the court erred by denying defendant's request to charge the jury in accordance with the model jury charge.  By its plain terms, the charge applies where a witness who testifies for the State is "not [a] legal resident[] of the United States and, therefore, subject to removal from this country."  Model Jury Charge (Criminal), "Credibility—Immigration Consequences of Testimony" (rev. June 6, 2016) (first bracket in original). There is no evidence that was the case here.  R.P.S. testified she was in the

United States legally under a work permit, and there was no evidence presented she was subject to removal. At the Rule 104 hearing, she testified her work permit expired three months later in June 2017, but at trial no similar testimony was elicited. As a result, the record before the jury was devoid of evidence R.P.S. was either in the country illegally or subject to the removal referred to in the model jury charge.

On its face, the charge also applies where a witness is aware of a program that could prevent her removal if the State informed federal immigration authorities she was a victim of a crime. R.P.S. was never asked at trial whether she faced removal from the country or if she understood the State could inform federal immigration authorities that she was a victim of a crime as a means of preventing her removal.[3] During trial, R.P.S. said nothing about being removed from the country. She explained only that she understood being a victim of a

---

[3] We note R.P.S. testified at the Rule 104 hearing that her work permit expired in June 2017, three months after the hearing and trial. Although that evidence alone did not establish R.P.S. would either be removed when the permit expired, or believed she would be removed at that time, it might have supported an inference her removal was imminent if presented at trial. At trial, however, R.P.S. did not testify that her work permit was to expire in three months, nor did she testify as to any other facts supporting a reasonable inference she faced removal by federal immigration authorities. Any inference at trial that she was subject to removal, might be removed, or believed the State could assist her in avoiding some putative removal would have necessarily been based on pure speculation.

A-3507-18T2

crime might assist her in qualifying for citizenship, but the jury was not presented with any evidence R.P.S. had applied for citizenship. R.P.S. testified only about applying for a green card. In other words, there is no evidence supporting defendant's request for the charge. See Lesniak v. Cnty. of Bergen, 117 N.J. 12, 20 (1989) ("A jury instruction that has no basis in the evidence is insupportable, as it tends to mislead the jury."). The court did not err by not giving the charge; it is not supported by the trial record.

Even assuming the court erred by failing to give the model jury charge, we do not have "a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Burton, 309 N.J. Super. at 289. Under the circumstances of this case, the charge would have actually inured to the State's benefit because its primary message is that a jury cannot make a determination about a witness's credibility based in whole or in part on the person's immigration status. If the charge had been given, it would have instructed that the jury could not consider R.P.S.'s immigration status to conclude that she did not "comply with our society's rules and, therefore, [was] more likely to ignore the oath requiring truthfulness on the witness stand." Model Jury Charge (Criminal), "Credibility—Immigration Consequences of Testimony" (rev. June 6, 2016). The charge further instructs the jury that a

16

witness's "violation of federal immigration laws does not, in and of itself, affect [his or her] credibility." Ibid. The failure to provide the charge deprived the State of instructions ameliorating any "negative sentiments in the minds of some jurors," Serrano, 407 N.J. Super. at 274, about R.P.S. that may have been "trigger[ed]," ibid., by the testimony about her immigration status. As a result, the State lost the benefit of the instruction that R.P.S.'s immigration status alone could not be considered in assessing her credibility.

The charge benefits a defendant to the extent it instructs a jury that in assessing a witness's credibility, "the focus must be on whether the possibility that the State can help [the witness] delay or avoid removal from the United States improperly influenced [the witness's] testimony." Model Jury Charge (Criminal), "Credibility—Immigration Consequences of Testimony" (rev. June 6, 2016). That instruction, however, has no application here because R.P.S. did not testify at trial there was any possibility the State would assist her in delaying any purported removal. Giving the instruction to the jury would not have aided the jury in its determination of R.P.S.'s credibility because there is no evidence supporting its application.

Although the charge directs that the jury consider whether a witness's testimony "was influenced by the hope or expectation for any favorable

treatment or reward such as delaying or avoiding removal from the United States by federal immigration authorities," we do not have a reasonable doubt the failure to give that portion of the charge led the jury to a result it otherwise might not have reached. The court's general instruction on the credibility of witnesses addressed the jury's consideration of witness bias and interest in the outcome of the trial as factors to be considered in assessing R.P.S.'s, and all the witnesses', credibility. In addition, defense counsel's primary theme during her summation focused on R.P.S.'s lack of credibility due to what were characterized as R.P.S.'s numerous motives for allegedly falsely accusing defendant of sexual assault. We are convinced that based on the court's general charge on credibility, and defense counsel's summation, the jury was fully capable of considering the evidence concerning R.P.S.'s immigration status and fairly deciding whether it supported defendant's claim R.P.S. falsely accused him of sexual assault. See, e.g., State v. Walker, 322 N.J. Super. 535, 547 (App. Div. 1999) (explaining that "determining whether a . . . failure to give a special credibility instruction constitutes reversible error" requires consideration of "the entire trial record, including" the general instructions on witness credibility, and the prosecutor's and defense counsel's summations).

Any of defendant's arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3507-18T2