644 A.2d 583

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
CHARLES BRENT, DEFENDANT–RESPONDENT.

Argued March 15, 1994—Decided July 27, 1994.

*Linda A. Rinaldi,* Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

*Michael B. Jones,* Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner,* Acting Public Defender, attorney; *Mr. Jones* and *Toni M. Seguin,* Designated Counsel, of counsel and on the briefs).

The opinion of the Court was delivered by

STEIN, J.

In this appeal we consider whether the trial court erred in failing to instruct the jury at defendant's request on the offense of criminal restraint as a lesser-included offense of kidnapping. The jury convicted defendant of first-degree kidnapping and first-degree aggravated sexual assault. The Appellate Division reversed the kidnapping conviction, holding that the trial court had

improperly declined to give the criminal-restraint charge, because in the Appellate Division's view the evidence provided a basis for the charge and defendant had requested it. 265 *N.J.Super.* 577, 590, 628 A.2d 372 (1993).

I

A Union County grand jury indicted defendant on charges of first-degree kidnapping, contrary to *N.J.S.A.* 2C:13–1b, and first-degree aggravated sexual assault, contrary to *N.J.S.A.* 2C:14–2a, in connection with the abduction and rape of a thirteen-year-old girl. The victim, M.C., testified at trial that defendant had seized her as she was walking to school and had carried her across the street to the front of an undeveloped lot. Defendant threw M.C. to the ground and struck her several times in the face. He then dragged her behind the foliage of the densely wooded lot to a spot from which she could not see the street, and there he raped her. A witness, Judy Barlow, testified that she had observed defendant from her apartment window carry M.C. across the street, throw her to the ground, and strike her in the face. Barlow left the window to call the police. When she returned, she could no longer see defendant and M.C. but could hear screams and muffled noises emanating from the shrubbery of the lot.

Officer Gilliam, who was patrolling in the area, responded to Barlow's call within minutes. Gilliam testified that when he arrived at the wooded lot, he did not see defendant and the victim from the street. Gilliam covertly entered the shrubbery and observed defendant on top of M.C. Unsure whether defendant was armed, Gilliam retreated to call for assistance and then reentered the wooded area. At that point defendant appeared to hear the officer because he quickly stood up and ran out of the lot. Gilliam, on foot, pursued defendant, who at one point "ran right out of his black shorts," but then Gilliam lost sight of defendant when he entered an apartment building. Another police officer apprehended defendant on a street behind the apartment building, and testified at trial that when apprehended defendant had pieces

of leaves and shrubbery in his hair and on his clothes and wore only undershorts below the waist. Gilliam identified defendant at the scene and at trial as the same man he had observed on top of the victim in the wooded lot and as the same man he had closely pursued.

While the police officers were chasing defendant, M.C. left the wooded area and encountered a private ambulance that had responded to the scene. M.C. told an ambulance worker that a man had followed her, had picked her up off the street, and had dragged her into the wooded area, where he had raped her. The ambulance, at the direction of a police detective, took M.C. to the street where the police officers had detained defendant. She identified defendant as the man who had seized and assaulted her.

The kidnapping statute requires that a removal be accomplished by force, threat, or deception, or, in the case of a child under fourteen years old, without the consent of a parent, *N.J.S.A.* 2C:13–1d. The parties stipulated at trial that the parents of M.C. did not consent to her being removed from the street. Defendant's defense at trial was misidentification. He testified that he had been walking to his brother's house, the address of which he did not know, when a police officer had come up behind him and had struck him over the head with a night stick. Defendant, fearing for his safety, had begun running, with the officer in pursuit. Defendant testified that at one point he had hidden in some bushes to avoid being captured. Defendant denied having carried, struck, or raped M.C., and disclaimed any knowledge of the wooded lot where the sexual assault occurred.

Prior to jury deliberations, defense counsel requested that the court charge the jury on third-degree criminal restraint, *N.J.S.A.* 2C:13–2, as a lesser-included offense of the first-degree-kidnapping charge on which defendant had been indicted. The trial court declined to give the requested charge, stating that it did not find criminal restraint to be a lesser-included offense of the "kidnapping by asportation" charged in this case, although the court acknowledged that criminal restraint might be a lesser-

included offense of kidnapping by confinement. The court further stated, "I don't think there's any facts which would give the jury the basis to bring that particular statute into play." The court charged the jury on first- and second-degree kidnapping and on first-degree aggravated sexual assault and second-degree sexual assault.

The jury convicted defendant of first-degree kidnapping and first-degree aggravated sexual assault. The trial court, in accordance with *N.J.S.A.* 2C:13–1c(2), sentenced defendant on the kidnapping conviction to life imprisonment with a twenty-five-year parole-ineligibility period. The court merged the aggravated-sexual-assault conviction into the kidnapping conviction as required by *N.J.S.A.* 2C:13–1c(2). The Appellate Division reversed defendant's kidnapping conviction on the basis that the trial court had erred in failing to charge the jury at defendant's request on criminal restraint. 265 *N.J.Super.* at 590, 628 *A.*2d 372. The Appellate Division determined that regardless of whether criminal restraint "is an elemental lesser included offense of the kidnapping for which defendant was indicted," *id.* at 587, 628 *A.*2d 372, the trial court should have instructed the jury on criminal restraint because the defendant had requested the lesser charge and the evidence provided a basis for the charge. *Id.* at 590, 628 *A.*2d 372. We granted the State's petition for certification and denied defendant's cross-petition. 134 *N.J.* 563, 636 *A.*2d 520 (1993).

## II

### A

*N.J.S.A.* 2C:1–8e provides that a court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." The statute has been characterized and construed as requiring not only a rational basis in the evidence for a jury to convict the defendant of the included offense but requiring also a rational basis in the evidence for a jury *to acquit the defendant of*

*the charged offense* before the court may instruct the jury on an uncharged offense. See 2 *Final Report of the New Jersey Criminal Law Revision Commission,* § 2C:1–7 (renumbered when enacted as 2C:1–8) commentary at 26 (1971) ("Subsection e states that the Court shall not charge the jury on an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."); *State v. Sloane,* 111 *N.J.* 293, 299, 544 *A.*2d 826 (1988) ("[W]hen a lesser-included offense charge is requested by a defendant, the trial court is obligated * * * to examine the record thoroughly to determine if there is a rational basis in the evidence for finding that the defendant was not guilty of the higher offense charged but that the defendant was guilty of a lesser-included offense.").

In drafting *N.J.S.A.* 2C:1–8e, the Criminal Law Revision Commission relied substantially on section 1.07 of the Model Penal Code. *See* 1 *Final Report of the New Jersey Criminal Law Revision Commission, supra,* § 2C:1–7 source at 8. As originally drafted that Model Penal Code section provided that a court "shall not charge the jury" on a lesser offense unless a rational basis exists in the evidence. Prior to adoption of the official draft, the American Law Institute amended the provision to read that a court "shall not *be obligated to* charge the jury." *Model Penal Code and Commentaries* § 1.07 cmt. at 134 (Official Draft and Revised Comments 1985). The drafters added those words "to allow a court to submit an illogical included offense if the court believes that it is proper to do so. This, in effect, recognizes the jury's right to return a compromise verdict * * *." *Ibid.* Our Code does not contain the change, and instead retains the "shall not" language. *N.J.S.A.* 2C:1–8e. The refusal to adopt the Model Penal Code amendment reflects "an unwillingness to accede to the reasoning offered to support the revision. Accordingly, under our Code it is improper for a trial court to charge [an offense], even when requested by the defendant, if there is no evidence in the record to support a * * * conviction." *State v. Crisantos,* 102 *N.J.* 265, 276, 508 *A.*2d 167 (1986). See also *Model Penal Code*

*and Commentaries, supra,* § 1.07 cmt. at 135 ("Most courts * * * adhere to the view that it is not proper for a trial judge to submit a lesser included offense unless some reasonable interpretation of the evidence would support an acquittal of the greater inclusive offense and a conviction of the lesser included offense.").

Thus, our Code follows the earlier form of Model Penal Code section 1.07(5) (formerly numbered 1.08(5)). The commentary to the original Model Penal Code draft discusses the rationale and application of that section:

> Where the proof goes to the higher inclusive offense and would not justify any other verdict except a conviction of that offense or an acquittal, it would be improper to instruct the jury with respect to included offenses. Instructions with respect to included offenses in such cases might well be an invitation to the jury to return a compromise or otherwise unwarranted verdict. The submission of an included crime is justified only where there is some basis in the evidence for finding the defendant innocent of the crime charged and yet guilty of the included crime. The presence of such evidence is the determinative factor. For example, if the prosecution's evidence tends to show a completed robbery and there is no conflicting evidence relating to elements of the crime charged, a contention that the jury might accept the prosecution's evidence in part and might reject it in part ought not to be sufficient.
>
> [*Model Penal Code* § 1.08 cmt. at 42–43 (Tentative Draft No. 5, 1956) (citations omitted).]

Our Code regards an offense as included within the charged offense when:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
>
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
>
> [*N.J.S.A.* 2C:1–8d.]

A trial court's process for determining whether it can instruct a jury on an uncharged included offense differs depending on whether the State or the defendant has requested the charge. *N.J.S.A.* 2C:1–8d, which supplies the above definition of an included offense, authorizes a court to charge a jury on an unindicted offense, over the defendant's objection, if the offense is "included"

in an offense for which the defendant was indicted. The statute implicitly concludes that when a trial court charges a jury on an included offense, it satisfies the notice and due-process concerns of article I, paragraph 8 of the New Jersey Constitution, which states: "No person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury." *See* Cannel, *New Jersey Criminal Code Annotated,* comment 12 on *N.J.S.A.* 2C:1–8d (1993); *Model Penal Code and Commentaries, supra,* § 1.07 cmt. at 130 n. 111 ("A defendant is presumed to have notice that he may be convicted of any offense included in the offense charged."); *see also State v. LeFurge,* 101 *N.J.* 404, 415– 16, 502 *A.*2d 35 (1986) (holding that *N.J.S.A.* 2C:1–8d(2) consti- tutes express notice that defendant may be charged with conspira- cy as included offense consistent with notions of due process and fairness); *State v. Battle,* 256 *N.J.Super.* 268, 281, 606 *A.*2d 1119 (App.Div.) ("In the absence of a valid waiver, the submission to the jury of an offense which is not a lesser included offense violates a defendant's state constitutional right * * *."), *certif. denied,* 130 *N.J.* 393, 614 *A.*2d 616 (1992); *State v. Graham,* 223 *N.J.Super.* 571, 577, 539 *A.*2d 322 (App.Div.1988) ("[T]he New Jersey Consti- tution bars conviction of the lesser included offense unless the grand jury intended that result and the defendant had fair notice that he was being tried for that offense.").

■ On the other hand, when a defendant requests a charge, "to give the jury a chance to convict on a lesser charge," Cannel, *supra,* comment 13 on *N.J.S.A.* 2C:1–8e, the law's concern is not notice to the defendant but whether the evidence provides a rational basis for the charge:

> [W]here the defendant has not requested the charge, the existence of a lesser included offense should be analyzed largely on the basis of elements in the indictment to make sure those elements are "included" in the indictment so that the defendant has had fair notice of potential liability on the charge. Where the defendant requests the charge, on the other hand, analysis should focus on facts to ensure that there is a rational basis for a jury to reject the greater charge and convict of the lesser * * *.
>
> [*Ibid.*]

Accordingly, when a defendant requests a charge to the jury on a lesser offense, our case law has held that whether the lesser offense is strictly "included" in the greater offense, as defined by *N.J.S.A.* 2C:1–8d, is less important to a trial court's determination to charge the offense than whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser. *See State v. Purnell*, 126 *N.J.* 518, 531, 534, 601 *A.*2d 175 (1992) (holding that defendant was entitled to felony-murder charge, although not strictly speaking lesser-included offense of murder); *State v. Mancine*, 124 *N.J.* 232, 265, 590 *A.*2d 1107 (1991) (Stein, J., concurring) (stating that "in certain circumstances, subject to the requirements of fair notice, an offense not meeting the Code's definition of lesser-included offense should be charged to the jury if it is supported by the evidence"); *Sloane, supra*, 111 *N.J.* at 300, 544 *A.*2d 826 (stating that *N.J.S.A.* 2C:1–8d is "not all-encompassing" and categories of lesser-included offenses are "not water-tight compartments," so that offenses other than those encompassed by that statute may be lesser-included and properly charged to jury); *Battle, supra*, 256 *N.J.Super.* at 281, 606 *A.*2d 1119 ("[T]he failure to submit a lesser offense to the jury which does not satisfy the Code's definition of a lesser-included offense may under some circumstances violate the due process guarantees of the federal and state constitutions."); *see also Model Penal Code and Commentaries, supra*, § 1.07 cmt. at 132 ("[C]ourts have taken the position that while the Constitution requires that the prosecution be limited to those offenses of which the defendant had notice, it does not require that the defendant be so limited, and have held that the defendant is entitled to an instruction on a lesser offense, *whether included or not*, whenever under the evidence a jury may find him guilty of the lesser and not guilty of the greater offense.").

Although we have held that the determination of whether an offense qualifies as lesser included within the definition of *N.J.S.A.* 2C:1–8d is less significant when the defendant, as op-

posed to the prosecutor, requests the charge, a trial court cannot charge a jury on any offense requested by the defendant or suggested by the evidence. A trial court should not "scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty. The prosecutor has the primary charging responsibility, and the role of the court, within constitutional limitations, is to implement the statutory pattern of the Code for charging and prosecuting criminal offenses." *Sloane, supra,* 111 *N.J.* at 302, 544 *A.*2d 826; *see also State v. Smith,* 136 *N.J.* 245, 642 *A.*2d 978 (1994) (holding defendant indicted for armed robbery not entitled to instruction on theft of services, such offense constituting neither lesser-included offense nor lesser related offense but separate uncharged harm).

The Model Penal Code and our Code do not address whether a court's failure to submit a lesser offense to the jury when requested by the defendant and warranted by the evidence constitutes reversible error. Although "[s]ome courts hold that such a failure is not reversible error since the jury may either convict or acquit of the offense charged and the substantial rights of the defendants are not affected," *Model Penal Code and Commentaries, supra,* § 1.07 cmt. at 135–36, our Court has determined that failure to instruct the jury at the defendant's request on a lesser charge for which the evidence provides a rational basis warrants reversal of the defendant's conviction. *See Crisantos, supra,* 102 *N.J.* at 273, 508 *A.*2d 167. A defendant is entitled to an instruction on a lesser offense supported by the evidence regardless of whether that charge is consistent with the theory of the defendant's defense. *State v. Powell,* 84 *N.J.* 305, 317, 419 *A.*2d 406 (1980); *State v. Hollander,* 201 *N.J.Super.* 453, 473, 493 *A.*2d 563 (App.Div.), *certif. denied,* 101 *N.J.* 335, 501 *A.*2d 983 (1985). However, sheer speculation does not constitute a rational basis. *See State v. Darrian,* 255 *N.J.Super.* 435, 446, 605 *A.*2d 716 (App.Div.), *certif. denied,* 130 *N.J.* 13, 611 *A.*2d 651 (1992); *State v. Mendez,* 252 *N.J.Super.* 155, 159–60, 599 *A.*2d 565 (App.Div. 1991), *certif. denied,* 127 *N.J.* 560, 606 *A.*2d 371 (1992). The

evidence must present adequate reason for the jury to acquit the defendant on the greater charge and to convict on the lesser.

In *Crisantos, supra*, we held that the trial court had not erred in failing to charge the jury on passion/provocation manslaughter at defendant's request because that charge was "not only inconsistent with the defendants' testimony; it [was] also inconsistent with the State's version of the homicide and [was] substantiated by *no* testimony in the record." *Id.* at 280, 508 *A.*2d 167. Comparatively, in *Sloane, supra*, 111 *N.J.* 293, 544 *A.*2d 826, we concluded that the trial court had improperly declined to instruct the jury at the defendant's request on a lesser aggravated-assault charge. The trial court had concluded that the victim's stab wound in the arm had constituted "serious bodily injury," defined by *N.J.S.A.* 2C:11–1b as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," and, therefore, had refused to charge the jury on any offense less than second-degree aggravated assault. *Id.* at 297, 544 *A.*2d 826. After examining the legislative scheme for criminalizing assault, we stated that the court's single charge "was too tight a fit for the facts, given the legislative grid of criminal culpability, which depends on a jury determination of various elements of the offense." *Id.* at 298, 544 *A.*2d 826. We reversed the defendant's second-degree aggravated-assault conviction because the proofs suggested that the jury could have found that the injury suffered by the victim was not "serious bodily injury" but the lesser "bodily injury," warranting a charge on third-degree aggravated assault. *Id.* at 298–99, 544 *A.*2d 826.

B

Defendant was indicted on charges of first-degree kidnapping, based on his unlawful removal of M.C., and of first-degree aggravated sexual assault. Defendant requested that the trial court also charge the jury on the third-degree offense of criminal

restraint. The kidnapping statute, with regard to a non-ransom kidnapping, provides:

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:
>
> (1) To facilitate commission of any crime or flight thereafter;
>
> (2) To inflict bodily injury on or to terrorize the victim or another; or
>
> (3) To interfere with the performance of any governmental or political function.
>
> [*N.J.S.A.* 2C:13–1b.]

Kidnapping is a crime of the first degree unless the actor "releases the victim unharmed and in a safe place prior to apprehension," in which case it is a crime of the second degree. *N.J.S.A.* 2C:13–1c(1). The kidnapping statute provides for an extended term of twenty-five years to life imprisonment with twenty-five years parole ineligibility for a defendant who commits a sexual assault against a kidnapping victim who is less than sixteen years old. *N.J.S.A.* 2C:13–1c(2)(a). That statute, however, requires that the court merge the sexual-assault conviction into the kidnapping conviction for sentencing purposes.

"It is evident that the legislature intended harsh treatment for kidnappers; it is further evident that by maximizing the kidnapper's incentive to return the victim unharmed, the legislature realized that the risk of harm attendant upon isolation is the principal danger of the crime." *State v. Masino,* 94 *N.J.* 436, 446, 466 *A.*2d 955 (1983). The drafters of the Model Penal Code, after which our kidnapping statute is patterned, also focused on the additional harm that can result when a defendant isolates a victim:

> [I]f the offense is properly defined so as to be limited to substantial isolation of the victim from his normal environment, it reaches a form of terrifying and dangerous aggression not otherwise adequately punished. * * * A disposition to violence or theft in an actor who takes the trouble to set the scene so that he will have a relatively free hand to deal with his isolated victim is obviously more likely to lead to more dangerous consequences. A final reason for retaining kidnapping as a distinct offense, and for making it a first degree felony under some circumstances, is that an isolated victim may be killed and disposed of in such a way as to make proof of murder impossible, although the fact of abduction with criminal purpose is clear.
>
> [*Model Penal Code* § 212.1 cmt. at 15 (Tentative Draft No. 11, 1960).]

This Court has determined, with regard to the language of the kidnapping statute, that

> one is transported a "substantial distance" if that asportation is criminally significant in the sense of being more than merely incidental to the underlying crime. That determination is made with reference not only to the distance travelled but also to the enhanced risk of harm resulting from the asportation and isolation of the victim. That enhanced risk must not be trivial.
>
> [*Masino, supra*, 94 *N.J.* at 447, 466 *A.*2d 955.]

"[A] 'substantial distance' [is] one that isolates the victim and exposes him or her to an increased risk of harm." *Id.* at 445, 466 *A.*2d 955.

In *Masino*, we concluded that the defendant's pulling the victim from her car and dragging her across the road and down an embankment to a pond where he sexually assaulted her could constitute removal of the victim a substantial distance and therefore sustained the defendant's kidnapping conviction. *Id.* at 437–38, 466 *A.*2d 955. *See also State v. La France*, 117 *N.J.* 583, 569 *A.*2d 1308 (1990) (holding that detention of victim for one-half hour in his home while defendant raped victim's wife constituted confinement for substantial period warranting conviction of first-degree kidnapping).

A person commits the third-degree crime of criminal restraint if the person "knowingly * * * [r]estrains another unlawfully in circumstances exposing the other to risk of serious bodily injury [or] [h]olds another in a condition of involuntary servitude." *N.J.S.A.* 2C:13–2. The criminal-restraint statute "provides intermediate penalties between those for kidnapping and false imprisonment * * *. [I]n view of the fact that the victim is not isolated, in danger of death, nor necessarily terrorized, classification of this offense as a crime of the third degree seems adequately severe." 2 *Final Report of the New Jersey Criminal Law Revision Commission, supra*, § 2C:13–2 commentary. According to the commentary accompanying section 212.2 of the Model Penal Code, after which our criminal restraint statute is modeled,

> Section 212.2 is distinguished from kidnapping either by the lack of substantial removal or confinement, as required for the greater offense, or by the absence of any of the specified kidnapping purposes. Thus, a person who restrains another

for an insubstantial period of time or in a public place may be guilty of [criminal] restraint but not of kidnapping. In either case, the actor has not effected that substantial isolation of his victim from the protection of the law which is the hallmark of the crime of kidnapping. Additionally, this section comes into play for substantial removal or confinement that is not accompanied by one of the designated kidnapping purposes. Thus, for example, the actor who uses a gun to force another to drive him somewhere engages in unlawful restraint under circumstances exposing the victim to risk of serious bodily harm. If he does so in order to terrorize the victim or in order to commit or escape from a felony, he may be convicted of kidnapping * * *. But if his purpose is merely to obtain transportation, he is liable only for the lesser offense of [criminal] restraint.

[*Model Penal Code and Commentaries, supra,* § 212.2 cmt. at 240–41.]

*See also La France, supra,* 117 *N.J.* at 590–91, 569 *A.*2d 1308 ("Consistent with the Model Penal Code's graded scheme of dealing with kidnapping and related offenses, our Code provides that when the defendant does not act with any of the stated purposes under *N.J.S.A.* 2C:13–1, the restraint of liberty is a third-degree crime if it exposes another to the risk of serious bodily injury or a condition of servitude.").

### III

The determination of whether an offense is lesser included, as defined by *N.J.S.A.* 2C:1–8d, cannot be made in the abstract. A court must look at the version of the offense charged established by the record before it. *See Mancine, supra,* 124 *N.J.* at 264, 590 *A.*2d 1107 (Stein, J., concurring) (stating that "the statutory definition of an 'included offense' refers back to the offense for which defendant was indicted"). Kidnapping by removal a substantial distance to commit an aggravated sexual assault almost invariably involves "restrain[ing] another unlawfully in circumstances exposing the other to risk of serious bodily injury * * *." *N.J.S.A.* 2C:13–2. Because it can be "established by proof of the same or less than all the facts required to establish the commission of the offense charged," *N.J.S.A.* 2C:1–8d(1), in this case kidnapping by asportation to facilitate the commission of an aggravated sexual assault, we conclude that criminal restraint is a lesser-included offense of the indicted offense.

 That conclusion, however, does not resolve the case before us. For a trial court to charge a jury on an unindicted offense, the court must conclude not only that the offense is included in the charged offense but also that the evidence at trial presents a rational basis for the jury to acquit the defendant of the greater offense and convict him or her of the lesser. As discussed above, the commentary to the Model Penal Code states that criminal restraint differs from kidnapping in that the lesser offense does not require "substantial" unlawful removal or confinement for one of the stated kidnapping purposes, but requires merely unlawful restraint in circumstances "exposing the other to risk of serious bodily injury." Thus concerning the proofs in this case, for the jury to have acquitted defendant of kidnapping and convicted him of criminal restraint it would have had to find that defendant did not remove the victim, M.C., a substantial distance from the vicinity where she was found, or that he did not remove her with the purpose of facilitating commission of the sexual assault or the flight thereafter.

The record contains no evidence that defendant moved the victim other than for the purpose of committing a crime or fleeing thereafter. Once defendant took the victim from the public street into the seclusion of the wooded lot, he immediately proceeded to pull down the victim's pants and underwear and to rape her. Neither the State, defendant, nor any witness put forth any reason for the abduction of M.C. other than to facilitate the commission of the sexual assault in an area isolated from the street. Thus, the evidence demonstrates no rational basis for the jury to acquit defendant of kidnapping based on absence of the requisite criminal purpose.

With regard to movement of the victim a substantial distance, the trial court instructed the jury in accordance with *Masino, supra,* 94 *N.J.* at 447, 466 *A.*2d 955, that

> substantial distance is not measured in feet, yards or miles nor by any other standard of linear measurement. Rather, a substantial distance is one [that] is sufficiently criminally significant, in that it is more than incidental to the underlying crime and substantially increases the risk of harm to the victim. That

increased risk of harm must not be trivial. If the victim is removed only a slight distance from the vicinity from which he or she was removed and that such removal does not create the isolation and increased risk of harm that are at the heart of the kidnapping statute, you should not convict the person of kidnapping.

Defendant encountered M.C. on John Street. He followed her to 7th Street, where he grabbed her on the sidewalk from behind and carried her struggling to the other side of the street. After subduing her with blows to the face, defendant dragged M.C. by her shirt behind the dense woods of an abandoned lot. From that location, M.C. could not see the street. Neither Barlow, the witness to M.C.'s abduction, nor the investigating police officer could see M.C. once defendant had removed her to the wooded lot. Significantly, no evidence adduced at trial contested either the location from which M.C. had been seized, the distance she had been carried, or the approximate area of the lot to which she had been carried. Those facts were undisputed, defendant's contention being that the crime had been committed by some other person. Nor was evidence offered from which the jury could have concluded that M.C.'s removal had not been criminally significant. She was taken from the public street, in full view of residents in the neighborhood, and dragged to the woods of an abandoned lot where neither she nor defendant could be observed.

M.C. was fortunate that a witness saw defendant seize and strike her and that that witness, Barlow, had called the police. That Barlow observed the initial seizure of M.C., however, does not diminish the danger of the removal of M.C. to an otherwise isolated location. M.C. remained unaware during the kidnapping and sexual assault that Barlow had witnessed her abduction and that police had been dispatched. As the commentary to the Model Penal Code recognizes, the terror of being snatched from the presumed safety of a public street and taken to a secluded area away from the protections of society, where a defendant may obtain a "free hand to deal with his isolated victim," can constitute a harm distinct from that inherent in a sexual assault. See *Model Penal Code* § 212.1 cmt. at 15 (Tentative Draft No. 11, 1960).

■ Although in many instances the movement accompanying a sexual assault may be incidental to the assault and therefore not within the ambit of the kidnapping statute, courts have recognized that movement can constitute a separate danger that substantially increases the risk of harm to the victim. *See, e.g., State v. Cole,* 120 *N.J.* 321, 335, 576 *A.*2d 864 (1990); *Masino, supra,* 94 *N.J.* at 446, 466 *A.*2d 955; *People v. Sherrod,* 220 *Ill.App.*3d 429, 163 *Ill.Dec.* 102, 106–07, 581 *N.E.*2d 53, 57–58 (holding asportation of victim, who was forced off street into alley and garage and there sexually assaulted, not inherent in sexual assault and constituted separate danger punishable as kidnapping), *appeal denied,* 142 *Ill.*2d 662, 164 *Ill.Dec.* 925, 584 *N.E.*2d 137 (1991). Thus, although the Code "distinguishes kidnapping from conduct that is merely incidental to the underlying crimes[, it] does not make kidnapping a 'free crime' when it accompanies another violent crime such as rape or robbery." *La France, supra,* 117 *N.J.* at 590, 569 *A.*2d 1308; *see State v. Tronchin,* 223 *N.J.Super.* 586, 594, 539 *A.*2d 330 (App.Div.1988) ("[W]here an offender entices a victim into a car by deception, transports the victim to a remote place without opportunity for the victim's escape and commits sexual assault, all of the elements of kidnapping may be established."); *State v. Bryant,* 217 *N.J.Super.* 72, 80–82, 524 *A.*2d 1291 (App.Div.) (holding that binding and gagging of robbery victims to facilitate defendant's flight from premises constituted more than confinement incidental to underlying robbery and supported kidnapping conviction), *certif. denied,* 108 *N.J.* 202, 528 *A.*2d 24, *cert. denied,* 484 *U.S.* 978, 108 *S.Ct.* 490, 98 *L.Ed.*2d 488 (1987); *see also Cole, supra,* 120 *N.J.* at 335, 576 *A.*2d 864 (holding defendant who forced victim to drive to wooded area near deserted warehouse where he raped and robbed her not entitled to merger of convictions of kidnapping, robbery, aggravated assault, and aggravated sexual assault).

Non-ransom kidnapping often precedes the commission of another crime. Indeed, the Code requires that such kidnapping be committed with the purpose of committing another unlawful act. *N.J.S.A.* 2C:13–1b(1)–(3). Furthermore, the Code specifically provides for an extended term of up to life imprisonment when a

defendant kidnaps and sexually assaults a child under the age of sixteen, thereby recognizing that those harms, although separate, often occur together. See *N.J.S.A.* 2C:13–1c(2)(a). That statute merges only for sentencing purposes the sexual-assault conviction into the kidnapping conviction. See *ibid.*

Because no evidence adduced at trial contradicted the evidence demonstrating that defendant had moved M.C. a substantial distance for the purpose of facilitating the commission of the sexual assault, we are unable to conclude that the record discloses a rational basis for the jury to reject the first-degree crime of kidnapping and to convict defendant of the third-degree crime of criminal restraint. Accordingly, the trial court did not err in declining to charge the jury on criminal restraint.

## IV

We reverse the judgment of the Appellate Division and reinstate the conviction for first-degree kidnapping.

For *Reversal and Reinstatement*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.