**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3494-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CARLOS ANTONETTI,

     Defendant-Appellant.

_____

Argued telephonically May 12, 2020 –
Decided June 25, 2020

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-03-0617.

Alexander J. Walder, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alexander J. Walder, on the briefs).

Daniel A. Finkelstein, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Daniel A. Finkelstein, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Carlos Antonetti appeals from his convictions on numerous charges following a jury trial. After a review of the arguments in light of the record and applicable principles of law, we affirm.

## I.

We derive the facts from the evidence elicited at trial. On May 12, 2014, F.P. (Fiona)[1] called defendant, her landscaper, asking him to go with her to buy a car. Ramon Ortiz was working for defendant that day. Defendant told Ortiz he needed to go to a doctor's appointment. When defendant returned, Ortiz saw Fiona tied up and gagged, lying on the floor and covered with a tarp in the back of defendant's van. Defendant told Ortiz that Fiona owed him money, and he had taken a large amount of cash from her.

Defendant and Ortiz drove to a store to purchase ammonia. Defendant put some ammonia on a sponge and then placed it against Fiona's nose. Ortiz stated Fiona was attached to the sliding passenger door of the van with zip ties.

A few hours later, defendant and Ortiz drove to The Home Depot (Home Depot) to purchase two forty-pound bags of lime. When defendant was preoccupied on his phone, Fiona asked Ortiz for help and told him she had

---

[1] We use initials and a pseudonym to protect the identity of the victim.

children. Defendant and Ortiz went back to Home Depot a second time and bought duct tape, which defendant put over Fiona's mouth.

Later that evening, defendant and Ortiz drove to a remote wooded area. Ortiz dug a hole between two-and-a-half to four feet deep. Defendant placed Fiona in the hole. Defendant and Ortiz then poured the bags of lime over her. While Ortiz was filling the hole with dirt, he heard Fiona making noises and saw her move. He then placed tree branches and a car tire over the filled-in hole.

Defendant was located and arrested in a hotel room. He had almost $6000 in cash on him. The police found blood in the hotel room as well as on a t-shirt and pair of gloves.

After Ortiz told police where he and defendant had buried Fiona, they located her body. Her ankles and wrists were tied together with rope and zip ties, there was duct tape around her eyes, mouth, nose, and wrists, and her jeans and underwear were around her ankles. A black cord, a t-shirt, a tank top, and a cut-off hood from a sweatshirt were found wrapped around her neck and a branch was found in her hand. Also buried with Fiona were two empty lime bags, a black plastic trash bag, a shoe, and some duct tape.

Police found duct tape and zip ties in defendant's van that matched the items recovered from the scene. There were also zip ties attached to the sliding

door on the passenger side of the door. DNA testing revealed defendant's DNA on the t-shirt found around Fiona's neck and on the zip ties in defendant's truck. An autopsy concluded Fiona died from asphyxiation. The medical examiner ruled the manner of her death as a homicide.

## II.

In March 2015, defendant was indicted with: first-degree murder, N.J.S.A. 2C:11-3(a)(1) to (2) and 2C:11-3(b)(4)(c) and (g); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) to (2); first-degree felony murder (kidnapping), N.J.S.A. 2C:11-3(a)(3); second-degree robbery, N.J.S.A. 2C:15-1(a); and first-degree felony murder (robbery), N.J.S.A. 2C:11-3(a)(3).[2]

## III.

## A.

Trial began on November 14, 2017 and continued to December 12, 2017. Prior to jury selection on November 14, defense counsel requested an adjournment because defendant had not been able to watch a DVD of surveillance video evidence while in jail. Defendant also stated he had not seen two witness statements.

---

[2] Ortiz was also indicted on identical counts. He pled guilty to aggravated manslaughter and was serving a twenty-five-year sentence at the time of trial.

A-3494-17T4

The surveillance videos showed Ortiz exiting defendant's van at various locations to make purchases. Defense counsel advised the court he had watched the videos and discussed them with defendant. He also confirmed defendant had received a copy of the DVD while in jail. The State informed the court that defendant could watch the videos on its system later that day in the courtroom during a break in the proceedings.

The court denied the adjournment request, noting that the State complied with its discovery obligations in providing copies of the videos to defendant, defense counsel had discussed the content of the videos with defendant after watching them, and defendant would receive the witness statements and watch the videos by the end of the day.

Following the court's ruling, defendant became disruptive and was subsequently removed from the courtroom. He received the witness statements the following day and watched the videos in the courtroom.[3]

---

[3] The witnesses were not called to testify at trial. Their statements were not introduced into evidence.

B.

During opening statements, the prosecutor mentioned to the jury that Fiona's jeans and underwear were around her ankles when she was found. The prosecutor stated:

> There's -- we're not going to be able to answer every question in this case. We may not be able to establish what happened between [Fiona] and this defendant that led to her being tied up in the back of his car, in the back of his van. We may not be able to prove who pulled her pants down, or why, or how they came down. But, the evidence will show that there's no indication of any injuries to any parts of her genital areas, and no one is charged with any kind of sex[ual] assault in this case.

During the trial, several detectives from the Camden County Prosecutor's Office testified to their observations and identified photographs from the recovery of Fiona's body and the autopsy, which included references to Fiona's clothing.

Ortiz testified as a witness for the State. He described for the jury the instructions defendant gave him to dig a hole under some trees. When he finished, defendant placed Fiona in the hole, they poured the two bags of lime over her and then defendant told him to "Finish the job. Put the dirt in the hole." Ortiz testified that Fiona might have still been alive as he covered her with dirt because he heard her making a noise and thought she may have moved.

6

## C.

During the charge conference, defense counsel requested the trial court instruct the jury on aggravated manslaughter as a lesser-included offense to first-degree murder. The State objected.

Defense counsel argued defendant was reckless in causing Fiona's death because there was no testimony about whether she was still alive when she was placed in the hole. The judge responded, referring to Ortiz's testimony that he heard Fiona make noise after she was in the hole. Counsel stated whether Fiona was alive when she was placed in the hole was "of no moment" because the issue was whether defendant's act in placing her in the hole was reckless.

The judge then denied defense counsel's request to instruct the jury on aggravated manslaughter, reasoning a jury could not return a verdict "in reference to reckless acts when there are no reckless acts or facts to support an act of recklessness . . . ."

In her reasoning, the judge found that the cause of death was asphyxiation and the manner of death was homicide. She stated that Fiona was placed in a "three feet deep" hole in a "desolate area," and covered with dirt. A heavy car tire and tree branches were placed on top of the "grave." While in the hole, Fiona could not move, talk, or see because her arms and legs were tied up,

A-3494-17T4

garments around her neck were "choking" her, and her head was wrapped in duct tape.

The judge stated: "I do not find any lesser included. I think it's all or nothing. It's purposeful or knowing conduct when you look at the facts." The judge concluded there was no basis for an aggravated manslaughter charge because the facts demonstrated defendant's actions were purposeful or knowing, not reckless.

Defendant was convicted on all counts. Thereafter, he was sentenced to a term of life imprisonment without parole and consecutive terms of twenty years and eight years, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

IV.

On appeal, defendant presents the following issues in his counseled brief:

> I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF AGGRAVATED MANSLAUGHTER BECAUSE, VIEWING THE FACTS IN A LIGHT MOST FAVORABLE TO THE DEFENDANT, A RATIONAL BASIS EXISTED UPON WHICH THE JURY WOULD HAVE FOUND [DEFENDANT] INNOCENT OF FIRST-DEGREE MURDER BUT GUILTY OF AGGRAVATED MANSLAUGHTER.

A-3494-17T4

II. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT GRANTING A CONTINUANCE OR ADJOURNMENT BASED ON [DEFENDANT] RECEIVING INCOMPLETE DISCOVERY BEFORE THE START OF TRIAL.

In a pro se supplemental brief, defendant asserts:

THE ADMISSION OF REPEATED TESTIMONY TO, PHOTOGRAPHS OF AND PROSECUTOR'S REFERENCES TO THE VICTIM'S PANTS AND UNDERWEAR DOWN AROUND HER ANKLES, SHOULD HAVE BEEN EXCLUDED AS CUMULATIVE AND UNDULY PREJUDICIAL UNDER N.J.R.E. 403, AND AS OTHER-CRIME EVIDENCE OR BAD ACTS UNDER N.J.R.E. 404(B).

A.

We begin by addressing defendant's argument that the trial court erred in failing to instruct the jury on aggravated manslaughter as a lesser-included offense of murder. The State contends our standard of review is plain error because defense counsel failed to properly request the aggravated manslaughter charge. We disagree. Defense counsel asked for the aggravated manslaughter charge during the charge conference, providing reasons for his request and noting his disagreement with the judge's ruling when she declined to give the charge.

When a jury charge has been requested by the parties, the standard of review is whether "a rational basis" exists for a jury to convict a defendant of a

lesser-included offense. State v. Fowler, 239 N.J. 171, 187-88 (2019) (quoting

State v. Funderburg, 225 N.J. 66, 81 (2016)).

Defendant asserts his actions in placing duct tape on Fiona's nose and mouth and placing her in the hole where she was buried were only reckless because she may not have been alive when she was placed in the hole and, if she was alive, Ortiz was the one who intended to kill her by burying her.

An offense is a lesser-included offense when:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
>
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.
>
> [N.J.S.A. 2C:1-8(d).]

A trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e).

In reviewing a trial court's denial of a request for a charge on a lesser-included offense, we must determine "whether 'the evidence presents a rational

basis on which the jury could [1] acquit the defendant of the greater charge and [2] convict the defendant of the lesser.'" State v. Carrero, 229 N.J. 118, 128 (2017) (alterations in original) (quoting State v. Brent, 137 N.J. 107, 117 (1994)). "If such a rational basis exists, a trial court's failure to give the requested instruction is reversible error." Ibid. (citing Brent, 137 N.J. at 118).

A defendant commits murder when he or she "purposely causes death or serious bodily injury resulting in death," or "knowingly causes death or serious bodily injury resulting in death . . . ." N.J.S.A. 2C:11-3(a)(1) and (2). In contrast, a defendant commits aggravated manslaughter when he or she "recklessly causes death under circumstances manifesting extreme indifference to human life." N.J.S.A. 2C:11-4(a)(1). "Aggravated manslaughter is a lesser-included offense of murder." State v. Galicia, 210 N.J. 364, 400 (2012) (citation omitted). Therefore, the issue presented to the court was whether there was a rational basis on which the jury could have acquitted defendant of murder and convicted him of aggravated manslaughter.

The State presented evidence to the jury describing defendant's actions of kidnapping Fiona, tying her hands and feet with rope and zip ties, wrapping articles of clothing and a cord around her neck, placing duct tape on her head, eyes, nose, and mouth, and covering her with a tarp in the back of his van. He

11

picked up Ortiz and they drove around for several hours making various purchases, which included ammonia, bags of lime and duct tape. Defendant used the ammonia to render Fiona unconscious.

After dark, defendant drove to a desolate wooded area. After instructing Ortiz to dig a hole, defendant placed Fiona in it. They poured eighty pounds of lime into the hole. Defendant then told Ortiz to "Finish the job. Put the dirt in the hole."

When Ortiz was covering the victim with dirt, he thought she "wasn't dead" because he saw her move and heard her make noise. Ortiz placed tree branches and a car tire over the hole. The medical examiner testified that Fiona's cause of death was asphyxiation caused by the duct tape over her nose and mouth and by compression from the dirt on her body after she was buried.

Considering those facts, we are satisfied the court properly concluded there was no evidence to provide the jury with a rational basis to conclude defendant did not either purposely or knowingly kill Fiona and to acquit defendant of murder and convict him of aggravated manslaughter. We discern no error in the court's determination not to charge the jury with the lesser-included aggravated manslaughter offense.

12                                          A-3494-17T4

## B.

We briefly address defendant's contention that the trial court abused its discretion in denying his request to adjourn the trial. Defendant asserts he had not received all of the discovery. We disagree.

Defendant and his counsel were provided copies of the video evidence more than a year before trial. Counsel confirmed he reviewed the surveillance videos and discussed them with defendant prior to trial. When defendant informed the court he could not view the DVD while in jail, he was shown the video evidence in the courtroom. He also was given a copy of the witness statements.

Defendant has not identified any prejudice resulting from the alleged discovery violations or from the judge's decision not to delay the trial. We are satisfied the trial judge did not abuse her discretion in denying defendant's adjournment request.

## C.

We turn to defendant's pro se arguments in his supplemental brief challenging the references to Fiona's jeans and underwear being found around her ankles. Defendant asserts for the first time on appeal that he was deprived of a fair trial because the trial court did not sua sponte exclude the references

A-3494-17T4

under N.J.R.E. 401, 403 or 404. He contends the jury may have inferred that he sexually assaulted Fiona.

We review defendant's arguments for plain error. Under that standard, "[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." R. 2:10-2.

As our Supreme Court has stated, when applying the plain error doctrine to evidence that should have been excluded, "the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." State v. Garrison, 228 N.J. 182, 202 (2017) (quoting State v. R.K., 220 N.J. 444, 456 (2015)). In weighing the effect of improperly admitted evidence, we may assess "the overall strength of the State's case." State v. Sanchez-Medina, 231 N.J. 452, 468 (2018) (quoting Galicia, 210 N.J. at 388).

In the present case, defendant did not object to the references to the victim's jeans and underwear. To the contrary, defense counsel told the jury in his closing argument that because the semen recovered from Fiona was not from defendant or Ortiz, there was "someone else [involved] . . . that the police have failed to investigate," and defendant should therefore be found not guilty.

A-3494-17T4

The prosecutor responded in her closing argument that the jury should not be "concerned" about this DNA evidence because defendant and Ortiz were excluded as sources, defendant was not charged with sexual assault and Fiona's autopsy did not reveal any signs of sexual assault. The prosecutor surmised that Fiona's pants may have been pulled down when she was dragged into the hole and the semen most likely came from her husband.

We find defendant's argument without merit. The evidence regarding the location of Fiona's pants and underwear was relevant and descriptive. The references established how her body was found and "complete[d] the story" of how the crime was committed. See State v. Rose, 206 N.J. 141, 180 (2011) (quoting United States v. Green, 617 F.3d 233, 248 (3d Cir. 2010)). The references were not extrinsic evidence of other crimes under Rule 404(b); the prosecutor explicitly told the jury Fiona had not been sexually assaulted and defendant was not charged with a sexual offense.

Moreover, as stated, defense counsel used the references in his closing argument to urge the jury to acquit defendant. Under the doctrine of invited error, "trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal . . . .'" State v. A.R., 213 N.J. 542, 561 (2013) (citation omitted).

A-3494-17T4

The State presented overwhelming evidence to support the jury's verdict. Defendant has not demonstrated that references to the location of certain articles of clothing on Fiona were "clearly capable of producing an unjust result . . . ." See R. 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3494-17T4