**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4017-17T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAHMMEL B. CEPHAS, a/k/a
JAMEL CARPENTER,
JAHMEL CEPHAS,

    Defendant-Appellant.

_____

Submitted September 16, 2020 – Decided October 5, 2020

Before Judges Fuentes and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 15-11-1347 and 17-08-0886.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark S. Heinzelmann, Designated Counsel, on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jahmmel B. Cephas was tried before a jury and found guilty of first-degree aggravated manslaughter, second-degree unlawful possession of a handgun, second-degree possession of a handgun for unlawful purposes, third-degree hindering apprehension, and fourth-degree tampering with evidence, as charged in a Middlesex County indictment. In a bifurcated trial, the same jury thereafter found defendant guilty of second-degree certain persons not to have firearms. Defendant appeals from the judgment of conviction entered by the trial court. We affirm.

I.

On November 6, 2015, defendant was charged under Indictment No. 15-11-01347 with first-degree murder, N.J.S.A. 2C:11-3(a) (count one); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) and 2C:58-4 (count two); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) (count four); and fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count five).

A-4017-17T2

On August 8, 2017, another grand jury charged defendant in a single-count indictment, No. 17-08-0886 with second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1).

The evidence presented at trial showed that Richard Pryce and Shakira Peel became romantically involved in 2010. Between June 2013 and September 2013, Peel had a "sexual affair" with defendant. Eventually, defendant informed Pryce that he had a sexual relationship with Peel. After learning this information, Pryce ended his relationship with Peel, but the couple later resumed their relationship in October or November 2013. Thereafter, there was ongoing tension between Pryce and defendant. They used to be "cool" or "cordial" with each other, but they were never friends.

On the evening of February 13, 2015, Pryce and Peel were at the 829 Lounge (Lounge) in Perth Amboy attending a friend's birthday party. Although defendant was not invited, he arrived at the Lounge at approximately 12:30 a.m. on Valentine's Day, February 14, 2015. Defendant tried to approach Peel, but Pryce confronted him before he reached her.

Peel heard Pryce say to defendant: "Why are you near - - next to my girlfriend and what are you doing?" According to Peel, defendant responded by calling Pryce "a [f]ucking faggot . . . [c]oward." According to other attendees

at the Lounge, Pryce then pushed defendant and "poked him on the side of his head." The disc jockey working at the Lounge said, "Richard, calm down. It's not that serious." Bystanders got involved and held back Pryce and defendant. The bouncer escorted Pryce out of the Lounge. Shortly thereafter, the Lounge closed, and the patrons left.

Danielle Wright left the Lounge after it closed and saw Pryce standing next to her car. She explained what she witnessed:

> And then [defendant] proceeds around the corner, and [Pryce] charges towards him. <u>But before he charges towards him, I hear two shots</u>, not really knowing that it's two shots . . . . And then [Pryce] charges at him, and then they start like scuffling and they end up on the corner, like in front of my car on Barclay and Amboy Avenue. And then they're just like fighting. And then [Pryce's] still on the floor, the guy gets up, and then he shoots him and then he runs.
>
> [(Emphasis added).]

Disleidy Nunez also attended the party. She testified that after leaving the Lounge around 1:38 a.m., she saw Pryce "laying down on the ground" near the corner of Barclay Street and Amboy Avenue. Nunez noted that there was a man, later identified as defendant, standing over Pryce with a handgun pointed at him. Pryce was pleading loudly with his hands up: "Yo, yo, stop" and "Yo, yo, that's it." Defendant then shot at Pryce, who got up and ran back towards the Lounge.

4

As Pryce was running back toward the Lounge, he saw Nunez and told her: "Leidy, I got shot."

Harry Abreu was also an eyewitness to the shooting. He testified he saw defendant fire the gun, and that he pointed it towards the ground during the first couple of shots. Then, defendant stood over Pryce, who was lying on the ground with his hands face up in front of him, and shot him for the third time in his chest. Pryce was unarmed. Surveillance footage from nearby residential and commercial properties, including footage from the Lounge, captured the shooting and corroborated the testimony of the eyewitnesses.

Police arrived at the scene immediately following the shooting because they were already on their way in response to a "fight call." No weapons were uncovered, and the police were unable to locate a suspect. However, a crime scene technician recovered six bullet casings from the scene of the shooting. A subsequent forensic ballistics examination showed all six bullet casings were discharged from the same firearm.

After the shooting, two of Pryce's friends carried him to their car and drove him to the hospital where he was pronounced dead a few hours later. The Middlesex County Medical Examiner performed an autopsy on Pryce's body and found gunshot wounds to his right lower leg, right thigh, and right upper chest.

The Medical Examiner determined Pryce's cause of death was the gunshot wound to his chest and the manner of death was a homicide.

The United States Marshals Service assisted in apprehending defendant in the State of Georgia on March 21, 2015, and he was charged with Pryce's murder. On March 2, 2016, defendant filed a notice of the affirmative defense of justification pursuant to Rule 3:12-1. Prior to trial, defendant moved in limine to request a passion-provocation manslaughter charge. In response, the State moved to preclude defendant from asserting passion-provocation manslaughter to negate the mens rea required to sustain a murder conviction at trial.

At the close of the evidence but prior to summations, the trial court granted the State's motion to preclude a charge of passion-provocation manslaughter as a lesser-included offense to murder. The court determined there was no rational basis to instruct the jury on a charge of passion-provocation manslaughter. The trial court provided the following explanation in support of her ruling:

> First we have the inside of the bar when, viewing the testimony in the light most favorable to the defendant, the victim was the aggressor, but despite the potential for provocation at that point the bar scene did not result in any loss of control as there were no actions by the defendant for at least another five minutes, according to the video evidence, during which there were multiple intervening actions and events. The victim was

6

removed, the lights went on, more than a dozen people are moving in and around, going in and out of the bar. People are leaving the bar, both the defendant and the victim, are surrounded by and interacting with multiple friends.

So, while the potential provocation in the bar was not sufficient, even if it was there was time to cool off and there was a cooling off as evidenced by the defendant's demeanor in the video.

Furthermore, the provocation up to that time was -- was really way out of proportion to the defendant's reaction in pulling out a gun and firing shots toward the victim as the two men on the corner of Barclay and Amboy Avenue. The defendant's response to the victim's comments in the bar and even the victim's alleged act of poking, as described by the witness, Carpenter,[1] are completely disproportionate to pulling out a gun and the cases do hold that those whose use of force is not proportional to the provocation may not receive that charge.

The second point of potential provocation would be when the victim charged at the defendant at the corner immediately preceding the scuffle on the ground, however, and this is a big however, it does appear and I find that the defendant precipitated that charging by the victim by firing shots toward the victim.

---

[1] Jamar Carpenter was at the 829 Lounge on February 13, 2015. He testified that he "grew up" with both defendant and Pryce. Carpenter witnessed the initial altercation at the bar between defendant and Pryce. Carpenter testified that Pryce "poked" defendant on the head with his finger, but could not ascertain with what degree of force. Carpenter physically "stepped in" between the two men to keep them separated. As a result, "[t]he bar stopped playing the music because of the altercation. They turned the lights on and basically told people to start leaving." Carpenter saw Pryce leave the bar accompanied by his friends.

7

According to the case law, and I'm looking at [State v. Harris, 114 N.J. 525 (1995)] the defendant does not get the benefit of a passion[-]provocation manslaughter charge when he created the circumstances of his own passion. Defense [c]ounsel argued that the passion was provoked when the defendant was being tossed around like a rag doll on the street but, again, he created that circumstance by firing the gun at Richie, bringing the gun to the fist fight.

The Docaj Court was also cited in the State's brief, notes that in cases of consensual combat the defendant's response must be proportionate to the provocation and although it would be a stretch to call it a consensual combat in light of the fact that it was precipitated by the defendant shooting at the victim or even at the ground in front of the victim, the combat was not waged on equal terms and it is clear to this [c]ourt that the defendant did not fight on equal terms when he killed Richie with a deadly weapon which he had previously concealed on his person which is relevant based upon the Cristanos case.

So, those are my findings with regard to the granting of the State's motion to preclude the passion[-]provocation manslaughter charge.

[(Emphasis added).]

After an eight-day trial, the jury found defendant guilty of the lesser-included offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and guilty on the other four counts. Thereafter, defendant was tried before the same jury on the certain persons offense and found guilty. See State

v. Bailey, 231 N.J. 474, 484-85 (2018), (citing State v. Ragland, 105 N.J. 189, 193 (1986)). The court denied defendant's motion for a new trial and granted the State's motion for an extended term sentence on the aggravated manslaughter offense.

On December 21, 2017, following merger, the sentencing court sentenced defendant to an aggregate custodial term of sixty years on both indictments. The sentence consisted of an extended fifty-year term pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, for aggravated manslaughter; a concurrent five-year term for hindering apprehension with two-and-a-half years of parole ineligibility; and a consecutive ten-year term for the certain persons offense with five years of parole ineligibility. The court ordered defendant to pay statutory fines and penalties.

Defendant presents the following arguments on appeal:

POINT I

THE TRIAL COURT IMPROPERLY REFUSED TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF PASSION-PROVOCATION MANSLAUGHTER.

    A.  Standard of Review.

    B.  Standard for Passion-Provocation Manslaughter.

A-4017-17T2

C.  The Trial Court Should Have Charged Passion-Provocation Manslaughter Because The Facts, Viewed Most Favorably to Cephas, Show That Cephas Was Provoked By Pryce Into Using Lethal Force.

POINT II

THERE WAS NO BASIS FOR THE TRIAL COURT TO APPLY AGGRAVATING FACTORS ONE AND THREE, AND THERE WAS A BASIS TO APPLY MITIGATING FACTOR THREE; THE TRIAL COURT'S SENTENCE OF CEPHAS WAS ERRONEOUS AND SHOULD BE REVERSED.

A.  Standard of Review.

B.  The Trial Court Erred in Finding Aggravating Factor One.

C.  The Trial Court Erred in Finding Aggravating Factor Three (Commission of Additional Offenses).

D.  The Trial Court Should Have Found Mitigating Factor Three (Strong Provocation).

II.

We will begin our review with defendant's argument that the trial court committed reversible error in failing to instruct the jury with respect to passion-provocation manslaughter as a lesser-included offense of purposeful or knowing murder.

10

Proper jury instructions "are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). The court must give the jury "a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 287-88. The jury charge should include instructions on all "essential and fundamental issues and those dealing with substantially material points." Id. at 290. Because a defendant should be tried with correct jury instructions, "an erroneous charge will rarely stand on the ground that the error was harmless." State v. Barden, 195 N.J. 375, 394 (2008).

"N.J.S.A. 2C:1-8(e) provides that a court 'shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.'" State v. Brent, 137 N.J. 107, 113 (1994). Under this section of the Code, there must be "not only a rational basis in the evidence for a jury to convict the defendant of the included offense but . . . also a rational basis in the evidence for a jury to acquit the defendant of the charged offense before the court may instruct the jury on an uncharged offense." Id. at 113-14. "In deciding whether the rational-basis test has been satisfied, the trial court must view the evidence in the light most favorable to the defendant." State v. Carrero, 229 N.J. 118, 128 (2017).

A-4017-17T2

The trial court was only required to instruct the jury regarding the lesser included offense of passion-provocation manslaughter if the appropriateness of this instruction was "clearly indicate[d]" by the evidence. State v. Choice, 98 N.J. 295, 299 (1985). "Passion[-]provocation manslaughter has four elements: the provocation must be adequate; the defendant must not have had time to cool off between the provocation and the slaying; the provocation must have actually impassioned the defendant; and the defendant must not have actually cooled off before the slaying." State v. Mauricio, 117 N.J. 402, 411 (1990). "The first two criteria are objective, the other two subjective. If a slaying does not include all of those elements, the offense of passion[-]provocation manslaughter cannot be demonstrated." Ibid.

There was no rational basis for finding any of these elements based on the evidence presented at trial. To justify a finding of adequate provocation, "the provocation must be 'sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control.'" Id. at 412 (quoting State v. King, 37 N.J. 285, 301-02 (1962) (alterations in original)). Generally, "words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." State v. Crisantos, 102 N.J. 265, 274 (1986).

However, the Court has held that a threat with a gun might constitute adequate provocation. State v. Powell, 84 N.J. 305, 320 (1980).

The evidence in this case indicated that defendant and Pryce were romantically involved with the same woman, had a heated exchange of words, and Pryce shoved and poked defendant on the head with his finger. When defendant was ejected from the Lounge, he did not leave as directed but instead waited for Pryce outside and engaged him again while armed with a handgun. Defendant pulled out his handgun and shot Pryce at close range while Pryce laid on the ground helpless, repeatedly asking defendant to stop. Defendant shot Pryce in his right lower leg, right thigh, and right upper chest. According to the Medical Examiner, the shot to the chest was the fatal one. There was no evidence that Pryce attacked or attempted to attack defendant with lethal force. Whatever Pryce may have said to defendant could not be found to constitute "adequate provocation" to justify a finding of passion-provocation manslaughter.

Moreover, Pryce begged for defendant to "stop and had his hands and legs raised in a non-threatening manner." Even assuming that defendant was impassioned by his verbal altercation with Pryce, the trial court aptly found defendant lost "self-control," and sufficient time had passed for an ordinary

A-4017-17T2

person to cool off.  Further, the record confirms Pryce was unarmed during the encounter and pleaded for his life.  Under these circumstances, there was no rational basis to support a passion-provocation manslaughter charge.

III.

We have considered defendant's remaining arguments and are satisfied in light of the record and applicable law that none of them are of sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).  Nevertheless, we add the following comments.

Defendant argues that his sixty-year extended term sentence is excessive. He contends the sentencing court erred in finding aggravating factors one, N.J.S.A. 2C:44-1(1) (the nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner); aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (the risk that the defendant will commit another offense); and failing to find mitigating factor three, N.J.S.A. 2C:44-1(b)(3) (the defendant acted under a strong provocation), that is Pryce may have approached defendant first at the Lounge.

Appellate review of sentencing decisions is governed by an abuse of discretion standard.  State v. Blackmon, 202 N.J. 283, 297 (2010).  Absent a

"clear error of judgment," an appellate court may not substitute its judgment for that of the sentencing court. Ibid. (quoting State v. Roth, 95 N.J. 334, 363-65 (1984)). So long as the sentence is within statutory guidelines and the aggravating and mitigating factors "were based upon competent credible evidence in the record," it will not be disturbed. State v. Miller, 25 N.J. 109, 127 (2011) (quoting State v. Bieniek, 200 N.J. 601, 608 (2010)); see also State v. Clarke, 203 N.J. 166, 176-77 (2010).

We discern no abuse of discretion in the trial court's identification and weighing of the applicable sentencing factors. The record fully supports the sentence imposed. The trial court's findings as to the aggravating and mitigating factors were all supported by substantial credible evidence, and the sentence does not shock the judicial conscience.

Describing the events during the sentencing hearing, the trial court stated Pryce was "shot at least three times" and begged for his life "while the defendant stood over him, looked down at him, and shot him in the chest." Moreover, the court noted that Pryce lived for more than an hour after being shot and drowned in his own blood.

Throughout the trial, the court noted defendant displayed "a bit of an attitude" and had "very little signs of remorse." We conclude the court's

sentence was not an abuse of discretion and followed the sentencing guidelines.

cf. State v. Tindell, 417 N.J. Super. 530, 571-72 (App. Div. 2011).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION